[No. S018325. Nov. 18, 1991.]

JOHN HENDY et al., Plaintiffs and Appellants, v.
GARY LOSSE et al., Defendants and Respondents.

COUNSEL

Howarth & Smith, Don Howarth and Barbara Gregg Glenn for Plaintiffs and Appellants.

Ault, Deuprey, Jones, Danielson & Gorman, Michael J. Grace, Martin E. Costello, Thelin, Marrin, Johnson & Bridges, Curtis A. Cole, William F. Holbrook, Steven J. Bernheim, Luce, Forward, Hamilton & Scripps, Richard R. Spirra, Lawrence J. Kouns and Nathan S. Arrington for Defendants and Respondents.

Fred J. Heistand as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

BAXTER, J.—Review was granted in this matter to determine the effect, if any, of a 1982 amendment of Labor Code section 3602,[1] on the right of a person who suffers an industrial injury to sue a coemployee physician whose treatment allegedly aggravated the injury. The Court of Appeal held that while section 3602, as amended, no longer permits actions against a physician employer under the "dual capacity" doctrine, a coemployee action may be maintained under section 3601.

We disagree. While the Court of Appeal was correct in its conclusion that section 3601 alone governs the right of an employee to seek damages for industrial injuries caused by a coemployee, the immunity granted coemployees by section 3601 bars this medical malpractice action against Gary Losse, M.D., because he was acting within the scope of his employment when the conduct complained of occurred.

I

BACKGROUND

Insofar as they are relevant to plaintiff's cause of action against defendant Losse for medical malpractice and thus to the issue before the court, the allegations of the verified complaint reflect the following:[2]

Plaintiff John Hendy suffered injury to his right knee on August 11, 1986, while playing in a regular season football game as an employee of the San

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] For purposes of this appeal all well-pleaded material allegations of the complaint are accepted as true. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, A.L.R.4th 1720].)

Diego Chargers Football Company (Club). He was treated for that injury by defendant Losse, who was employed as a Club physician. As a condition of his continued receipt of salary and medical care at the expense of his employer, plaintiff was required to consult the Club physician.

Defendant Losse examined plaintiff pursuant to his employment by the Club, and advised plaintiff to continue playing football. From May 11, 1987, and continuing to September 1987, defendant Losse negligently diagnosed and/or treated plaintiff and advised plaintiff to continue playing football. On or about May 28, 1987, plaintiff suffered another injury to his right knee during a training session. He again consulted Dr. Losse, and defendant Losse again advised plaintiff to continue playing football. Dr. Losse lacked the knowledge and skill necessary to properly diagnose and treat plaintiff's condition or, although aware of the condition, advised plaintiff to continue to play football, with the result that plaintiff suffered irreparable and permanent injury to his right knee.[3] On or about September 8, 1987, when he consulted a physician who was not employed by the Club, plaintiff discovered that the cause of his injuries was defendant's failure to properly diagnose and treat his condition.

· Defendant demurred to the cause of action for medical malpractice on the ground that plaintiff's exclusive remedy for his employment-related injury was within the workers' compensation system. In support of the demurrer defendant asked that the court take judicial notice, pursuant to Code of Civil Procedure section 430.30 and Evidence Code section 452, of both the National Football League employment contract and the collective bargaining agreement between the league's management council and the National Football League Players Association, both of which governed plaintiff's employment.

The collective bargaining agreement included a provision outlining the players' right to medical care and treatment, and made the cost of medical

---

[3]The complaint stated five causes of action, only the fourth and fifth of which, plaintiff John Hendy's claim against Dr. Losse for medical malpractice and plaintiff Wanda Hendy's loss of consortium claim against Dr. Losse, are in dispute here. The first three counts stated causes of action against the Club for negligent hiring and against both the Club and Dr. Losse for intentional misrepresentation and negligent misrepresentation. These three counts were removed to federal court and were remanded to state court only after the Court of Appeal had filed its opinion. The trial court sustained the Club's demurrer to the fifth count and the Court of Appeal affirmed the judgment for the Club. Plaintiffs' answer did not raise any issues in addition to those set forth in the petition for review. (See Cal. Rules of Court, rule 28(d).)

The Club is not a party to the proceedings in this court. Our references to "defendant" are to Dr. Losse. Because Wanda Hendy's loss of consortium claim is dependent upon John Hendy's right to sue defendant and will not be discussed separately, our references to "plaintiff" are to John Hendy.

services to be rendered by Club physicians the responsibility of the Club. The contract between plaintiff and the Club provided that plaintiff would receive "such medical and hospital care during the term of this contract as the Club physician may deem necessary . . . ." The contract between defendant and the Club is not part of the record.

Plaintiff opposed the demurrer on two grounds—(1) defendant was acting in a dual capacity when he diagnosed and treated plaintiff, and (2) the action was permitted under subdivision (b)(2) of section 3602, which permits an action at law against an employer for damages proximately caused by aggravation of a work-related injury if the "injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment . . . ."

The trial court sustained the demurrer without leave to amend, ruling that a 1982 amendment of section 3602 made workers' compensation plaintiff's exclusive remedy even if a dual capacity situation existed, and that the complaint failed to state facts to establish concealment of either the injury or its relation to plaintiff's employment. The Court of Appeal held that because section 3602 applies only to lawsuits against employers, its limitation on use of the dual capacity doctrine applied only to actions against employers and had no impact on an injured employee's right to sue a coemployee.[4]

## II

### DEVELOPMENT OF THE DUAL CAPACITY DOCTRINE

Section 3600 establishes the conditions under which an employer's liability for compensation established by the Workers' Compensation Act is in lieu of any other liability of the employer to the employee for an injury suffered on the job.[5] Section 3602 provides in turn, with exceptions not relevant here, that when compensation is payable under section 3600, the right to recover

---

[4]As indicated in footnote 3, *ante*, the Court of Appeal affirmed the judgment for the Club. Plaintiff's answer did not raise any issues in addition to those set forth in the petition for review. (See Cal. Rules of Court, rule 28(d).) Neither that ruling nor the holding on the applicability of subdivision (b)(2) of section 3602 to the cause of action against the Club is before us.

[5]Section 3600: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

compensation is "the sole and exclusive remedy of the employee or his or her dependents against the employer. . . ." A parallel, but not identical, exclusive remedy provision, section 3601, prohibits actions against coemployees for injuries they cause when acting within the scope of their employment.

A judicially recognized exception to the exclusive remedy restriction on actions against employers—the "dual capacity doctrine"—has been understood to also permit an action for damages against a coemployee physician if the injury to the plaintiff employee was caused or aggravated by the defendant. This case arises because the Legislature has imposed limits on the dual capacity doctrine by amendment of section 3602.

### A. Dual Capacity of Employers

 The dual capacity doctrine posits that an employer may have or assume a relationship with an employee other than that of employer-employee, and that when an employee seeks damages for injuries arising out of the secondary relationship the employee's claim is not subject to the exclusive remedy provisions of the Workers' Compensation Act. The doctrine was first enunciated in *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], which, like this case, involved a medical malpractice claim.

At the time *Duprey* was decided, section 3601 governed actions against employers by injured employees. It then provided: "Where the conditions of compensation exist, the right to recover such compensation pursuant to the provisions of this division is, except as provided in section 3706, the exclusive remedy against the employer for the injury or death."

Plaintiff Duprey was employed as a practical nurse by defendants who were partners engaged in the practice of chiropractic. The plaintiff was

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence.

"(4) Where the injury is not caused by the intoxication of the injured employee.

"(5) Where the injury is not intentionally self-inflicted.

"(6) Where the employee has not willfully and deliberately caused his or her own death.

"(7) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.

"(8) Where the injury is not caused by the commission of a felonious act by the injured employee, for which he or she has been convicted.

"(9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . ."

injured on the job. She was treated by one of her employers and by a fellow employee, also a chiropractor, who was another defendant. The treatment aggravated her injuries. She applied for and received compensation from the Industrial Accident Commission (IAC) for the original injury and resulting disability, and then sued Dr. Shane, her employer, and Dr. Harrison, her coemployee, for malpractice in causing the subsequent injury. After jury trial, the plaintiff was awarded damages for that injury.

On appeal from the judgment, the defendants claimed, inter alia, that the IAC had exclusive jurisdiction over the plaintiff's claim, relying on section 3601 for that proposition. The Court of Appeal, whose opinion this court adopted, disagreed and affirmed the judgment for the plaintiff.

The court reasoned: " '[W]hen the employing doctor elected to treat the industrial injury, the doctor assumed the same responsibilities that any doctor would have assumed had he been called in on the case . . . . [S]uch third party doctor can be sued for malpractice resulting in an aggravation of an industrial injury, or a new injury. It follows that the employer-doctor may be sued for malpractice when he elects to treat the industrial injury.' " (*Duprey* v. *Shane, supra,* 39 Cal.2d 781, 789, bracketed deletions from Court of Appeal opinion omitted.) In further explanation, the court noted the right of an injured employee to sue a doctor provided by the employer's insurer for malpractice, and concluded that the employee did not lose that right if an employer who was a doctor treated the injury. " 'In such event, the employer-doctor is a "person other than the employer" within the meaning of section 3852 of the Labor Code . . . . In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to [plaintiff] was that of doctor and patient.' " (39 Cal.2d at p. 793, bracketed deletions from Court of Appeal opinion omitted.)

Use of the phrase "dual capacity" to describe this secondary relationship between the chiropractor/employer and patient/employee in *Duprey* v. *Shane, supra,* 39 Cal.2d 781, and analogous relationships in later cases apparently stems from the defendants' argument in *Duprey* that the result would recognize a "dual legal personality," a disfavored concept. Rejecting that argument, this court held:

" 'It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved . . . . bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact. Such a conclusion, in this case, is

in precise accord with the facts and is realistic and not legalistic. We conclude, therefore, that an employee injured in an industrial accident may sue the attending physician for malpractice if the original injury is aggravated as a result of the doctor's negligence, and that such right exists whether the attending doctor is the insurance doctor or the employer.' " (*Duprey* v. *Shane*, *supra*, 39 Cal.2d at p. 793.)

The reasoning of *Duprey* was applied to several variants of employer/physician relationship prior to legislative restriction of the dual capacity doctrine by amendment of section 3602.[6] We again explained the theory underlying the doctrine in *Bell* v. *Industrial Vangas, Inc.*, *supra*, 30 Cal.3d 268, 273, footnote 4: "This concept assumes a logical, rational and legally self-evident premise. An individual can act in two or more different, distinct capacities, either simultaneously or sequentially, giving rise in law to separate and distinct sets of obligations. There is no fictional character, no need to create any 'Doppleganger' to support the rule as long applied in California; only a recognition of a simple fact—one person can have separate and distinct legal personalities."

Finally, in *Jones* v. *Kaiser Industries Corp.* (1987) 43 Cal.3d 552, 560 [237 Cal.Rptr. 568, 737 P.2d 771], a case arising prior to the 1982 amendment of section 3602, we again described the concept:

"The dual capacity doctrine, first enunciated in this state in *Duprey* v. *Shane* (1952) 39 Cal.2d 781, 793, holds that if the employer occupies toward his employee a second relationship that imposes obligations different from those he has undertaken in his capacity as employer, he may be liable in tort in the event the employee is injured as a result of the violation of those distinct obligations. The rule has generally been applied to cases in which the employee was injured at work by the use of a product which the employer manufactured for public distribution [citations], or where the employer steps out of his role as employer by providing medical care to the employee [citations]." (See also, *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 162 [233 Cal.Rptr. 308, 729 P.2d 743] ["In all of these cases, the conduct which gave rise to the dual capacity doctrine was an act not ordinarily part of the employment."].)

---

[6]Among them were: employer/supplier of defective product manufactured by employer for general commercial sale (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266]; *Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605 [163 Cal.Rptr. 477]; *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103) [137 Cal.Rptr. 797]); respondeat superior liability of employer hospital for negligence of hospital employees in aggravating industrial injury (*D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661 [166 Cal.Rptr. 177, 613 P.2d 238]); and employer's insurance carrier acting outside role by conducting investigation of claim in fraudulent manner (*Unruh* v. *Truck Ins. Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063]).

## B. *Dual Capacity and Coemployees*

The *Duprey* decision also permitted the plaintiff to pursue her action against her coemployee, Dr. Harrison. The court did not identify any existing bar to that suit or explain the necessity for its analogy of that action to the action against the employer. We said only that Harrison was also subject to suit because " 'it is hard to see how Dr. Harrison is in any different position than the insurance company doctor would have been had he been called in to treat [plaintiff].' " (*Duprey* v. *Shane, supra,* 39 Cal.2d at pp. 794-795, bracketed deletions from Court of Appeal opinion omitted.)

There was no statutory limitation on actions against coemployees at the time *Duprey* was decided. Section 3852 had provided since its enactment in 1937 (Stats. 1937, ch. 90, p. 273) that an employee's claim for workers' compensation did not affect his or her right of action "against any person other than the employer."[7] Suits against coemployees were permitted.

In 1959, following *Duprey,* section 3601 was amended to include coemployees. Prior to that year, workers' compensation had been the exclusive remedy only as against an employer for the injury or death of an employee.

"Prior to 1959 when section 3601 was amended, there was no doubt that the common law right of an employee to sue a coemployee for injuries negligently inflicted while on the job [citation], was preserved in this jurisdiction by section 3852. *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043], held that 'Our workmen's compensation laws were not designed to relieve one other than the employer from any liability imposed by statute or common law.' [Citation.] At that time and until 1959, section 3601 merely stated: 'Where the conditions of compensation exist, the right to recover such compensation . . . is . . . the exclusive remedy against the *employer* for the injury or death.' (Stats. 1937, ch. 90, p. 269.)" (*Saala* v. *McFarland* (1965) 63 Cal.2d 124, 127 [45 Cal.Rptr. 144, 403 P.2d 400].)

As amended in 1959, section 3601 made workers' compensation the "exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his or her employment . . . ." (Stats. 1959, ch. 1189, § 1, p. 3275.) ▮ The immunity granted coemployees was more limited than that extended to employers, however. Workers' compensation was the exclusive remedy only

---

[7]Section 3852 now reads, in pertinent part: "The claim of an employee, including, but not limited to, any peace officer or firefighter, for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. . . ."

if the employee was *"acting within the scope of his or her employment. . . ."*[8] (*Ibid.*, italics added.)

This court considered the impact of the 1959 amendment in *Saala* v. *McFarland, supra,* 63 Cal.2d 124. There, the plaintiff employee suffered a compensable injury when she was struck by an automobile driven by a coemployee on a parking lot maintained by the employer. She sued the coemployee, who claimed that the immunity from suit granted coemployees by the 1959 amendment of section 3601 was coextensive with that granted employers by sections 3600 and 3601. This court rejected the argument:

"[W]e cannot agree with defendant's contention that the Legislature intended to exempt from the common law liability retained in section 3852 all employee actions causing harm to coemployees to the identical extent that the common employer is exempted from civil liability because of its provision for workmen's compensation. . . . The presumption that an overall change is intended where a statute is amended following a judicial decision [citation] is given its full effect if section 3601 as amended is construed to change the law stated in those cases and exempt from civil liability only a coemployee's actions within the scope of employment, rather than those 'arising out of and in the course of the employment.' " (*Saala* v. *McFarland, supra,* 63 Cal.2d 124, 128.)

The limitation of coemployee immunity to acts within the scope of employment reflects apparent legislative recognition that, because coemployees do not have financial obligations imposed on them under the workers' compensation law comparable to those imposed on an employer, granting the same broad immunity was not justified. Employers are granted immunity from suit in most cases because, regardless of fault, they are obligated to provide benefits to an injured employee. (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399]; *Pacific Gas & Elec. Co.* v. *Ind. Acc. Com.* (1961) 56 Cal.2d 219, 233 [14 Cal.Rptr. 548, 363 P.2d 596].) An employee is liable only for tortious conduct. There is no reason to grant employees the same broad immunity from suit that employers enjoy.

The 1959 amendment therefore granted a limited immunity to employees. That immunity protects employees from damage actions by coemployees, but only if the defendant was acting within the scope of employment when that defendant's conduct injured the plaintiff.

---

[8]Section 3600, then, as now, provided that the liability of an employer for compensation was "in lieu of any other liability whatsoever." Section 3602 stated: "In all cases where the conditions of compensation do not concur, the liability of the employer is the same as if this division had not been enacted."

This court's earlier recognition of coemployee liability in *Duprey* v. *Shane*, *supra*, 39 Cal.2d 781, was consistent with the limitation created by the 1959 amendment of section 3601. However, courts which relied on that decision and the "dual capacity" doctrine thereafter as a basis for permitting actions against coemployees did not recognize, as this court did in *Saala* v. *McFarland*, *supra*, 63 Cal.2d 124, that coemployees were not exempted from suit when the workers' compensation system was created, and that section 3601 establishes an immunity from suit for coemployees which is distinct from that granted employers by section 3602.

Thus, in *Hoffman* v. *Rogers* (1972) 22 Cal.App.3d 655 [99 Cal.Rptr. 455], a malpractice action was permitted against a coemployee physician who allegedly aggravated an industrial injury. In *Hoffman*, as in the present case, the services for which the physician was employed included treatment of industrial injuries. Relying on the statement in *Duprey* v. *Shane*, *supra*, 39 Cal.2d 781, 794, that the principles underlying our conclusion that the employer could be held liable were equally applicable to the coemployee physician, the Court of Appeal held that the 1959 amendment of section 3601 did not affect the "dual legal personality" rule enunciated in *Duprey*. (22 Cal.App.3d at p. 662.)

### III

#### LEGISLATIVE RESTRICTION OF DUAL CAPACITY

Prior to the 1982 amendment, section 3602 stated only: "In all cases where the conditions of compensation do not concur, the liability of the employer is the same as if this division had not been enacted." (Stats. 1937, ch. 90, p. 269.)

In 1982, the Legislature amended sections 3601 and 3602. Since that amendment, section 3601 has applied only to coemployees. Section 3602 has governed civil liability of employers. As amended, section 3602 provides in pertinent part:

"(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and *the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall*

*not permit the employee or his or her dependents to bring an action at law for damages against the employer.*" (Italics added.)[9]

██ Defendant argues that this amendment reflects a legislative intent to abrogate the dual capacity doctrine as to coemployees as well as employers. As a result, he claims, coemployees are entitled to the same protection against suit that employers now enjoy, and may not be held liable on a dual capacity theory.

Failing to recognize the significance of section 3601, defendant argues that the language of section 3602, as amended, and the legislative history of the 1982 amendment, reflect an intent to abolish the dual capacity doctrine altogether—as to both employers and coemployees—except as expressly provided in section 3602.[10]

Plaintiff argues in response that the 1982 amendment does not affect application of the doctrine in malpractice actions against employer-physicians in medical malpractice cases involving aggravation of industrial injury, and has no effect whatsoever on actions against coemployees. He also argues that, regardless of the impact of the 1982 amendment on actions against employers, the legislative history of the 1982 amendments reflects no consideration of the dual capacity rule as applied to coemployees. Therefore, he reasons, the Legislature cannot be deemed to have intended that the restrictions imposed in section 3602 be extended to actions governed by section 3601.

Plaintiff's view has been accepted by one commentator. Professor Larson states in his treatise: "The dual capacity doctrine was legislatively abolished

---

[9]The Legislature also amended section 3600 in 1982 to add subdivision (a). That subdivision now provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the . . . conditions of compensation concur: . . ."

Section 3706 permits an action against an employer who fails to "secure the payment of compensation" as by carrying insurance against liability or by self-insuring.

[10]Contrary to the assumption of defendant and the Court of Appeal, it is not clear that the 1982 amendment of section 3602 abolished the dual capacity doctrine insofar as it applied to employer physicians who provide treatment to their employees for industrial injuries. (See *Sturtevant* v. *County of Monterey* (1991) 228 Cal.App.3d 758 [279 Cal.Rptr. 161].)

The Legislature also preserved another facet of the judicially created dual capacity doctrine in what is now subdivision (b)(3) of section 3602, permitting an action against an employer "[w]here the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person."

in 1982 as to the employer as a third-party defendant, but apparently not as to the co-employee doctor." (2A Larson, The Law of Workmen's Compensation (4th ed. 1990) § 72.61(b), p. 228.47, fn. 65.1.)

The legislative history of the 1982 amendment of section 3602 (Stats. 1982, ch. 922, § 6, p. 3367), also suggests that the Legislature did not intend that the restriction of the dual capacity doctrine inserted into section 3602 be incorporated into section 3601. The Legislative Counsel's Digest of Assembly Bill No. 684 (1981-1982 Reg. Sess.), which amended section 3602, referred only to actions against employers, stating: "This bill would provide that the right to workers' compensation is the sole and exclusive remedy of the employee against the employer, and the fact that either party occupied another or dual capacity shall not permit the employee to bring an action at law for damages against the employer."

Defendant relies on the same legislative history, but none of that history includes any reference to actions against coemployees or suggests that the Legislature intended any change in the existing ban on actions against coemployees who were acting within the scope of their employment. One item on which defendant relies, a report of the conference committee on the bill amending section 3602, states that "the bill contains strict limitations on the 'dual capacity' doctrine," but the report does not support a conclusion that the Legislature had in mind any change in the dual capacity doctrine as it applies to coemployees. To the contrary, the report explains that the "provisions are necessary so that California *employers are not held liable for the payment of both worker's compensation benefits and tort liability awards* for a substantial number of work-related injuries." (Rep. by Conference Com. on Assem. Bill No. 684, pp. 2-3, italics added.) Like the Legislative Counsel's digest, this report refers only to the impact of the dual capacity doctrine on employers. For that reason, and because coemployees are not subject to the potential for dual liability, and employers do not face that danger for acts committed by employees which are outside the scope of their employment, this report does not support a conclusion that the Legislature intended the amendment of section 3602 to affect the liability of coemployees.

We agree with plaintiff, therefore, that the legislative history of the 1982 amendment of section 3602 does not suggest that the Legislature intended to expand the immunity of coemployees when it amended section 3602. The legislative history reflects no consideration of, or intent to alter, the liability of coemployees.

While coemployees are not protected by the exclusive remedy provisions of section 3602, however, they do enjoy the immunity created by section

3601. That section expressly immunizes coemployees for acts within the scope of employment. Because the judicially recognized dual capacity doctrine did not and could not create an exception to the statutory immunity granted coemployees in 1959, the amendment of section 3601 in 1982 to restrict or preclude application of that doctrine to coemployees was unnecessary. Therefore, while we agree with plaintiff that the 1982 amendment of section 3602 (to restrict the dual capacity doctrine theretofore applied to employers) does not affect the liability of coemployees, it does not follow that this suit may be prosecuted.

In the 1982 amendments to the workers' compensation law the Legislature made a less extensive, but equally significant, amendment to the coemployee immunity provision of section 3601. That amendment supports, indeed compels, a conclusion that a coemployee physician enjoys immunity from suit for malpractice under the 1959 amendment of section 3601 if the coemployee physician was acting within the scope of employment when the injury was caused.

Prior to the 1982 amendments, section 3601 already included the exclusive remedy language that was added to section 3602 in 1982. As amended in 1959 (Stats. 1959, ch. 1189, § 1, pp. 3275-3276) and by subsequent nonsubstantive amendments, subdivision (a) of section 3601 provided:

"(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against the other employee, as if this division did not apply, in the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee."

In the 1982 amendment of section section 3601, however, the Legislature added an express restriction on nonstatutory exceptions to the exclusive remedy rule applicable to coemployees.

As amended to apply only to coemployees, section 3601, subdivision (a), now states: "Where the conditions of compensation set forth in Section 3600

concur, the right to recover such compensation, pursuant to the provisions of this division is, *except as specifically provided in this section,* the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment . . . ." (Italics added.) Those statutory exceptions encompass only injury caused by wilful and unprovoked physical aggression of a coemployee and those caused by a coemployee's intoxication. And, consistent with the legislative purpose of preventing dual liability for employers, subdivision (b) of section 3601 provides that the employer may not be held liable for a damage award against a coemployee when suit is brought under one of the exceptions.

The 1982 amendment of section 3601 confirms therefore the legislative intent that there be no judicially created exceptions to the immunity that has been granted to coemployees.

Plaintiff argues that a malpractice action should be permitted against a coemployee physician even if the physician was providing treatment pursuant to his employment obligations because a physician's duties as a professional are separate from the employment relationship. The statute is clear, however. If one employee is acting within the scope of employment at the time the employee injures another employee, workers' compensation is the injured employee's exclusive remedy against the coemployee. The rule proposed by plaintiff cannot be reconciled with the statutory language.

The Court of Appeal disagreed with the trial court's ruling on the impact of the 1982 amendment of section 3602, because it believed that the failure of the Legislature to amend section 3601 in the same way that section 3602 had been amended in 1982 had to be understood as reflecting only an intent to restrict application of the dual capacity doctrine to employers. The Court of Appeal failed to recognize, however, that section 3601 already created an immunity which is absolute if a coemployee defendant was acting within the scope of employment when the plaintiff suffered the industrial injury.

The Legislature has made it clear that if a coemployee was acting within the scope of his or her employment, the only exceptions to the immunity created by section 3601 are those created by statute. Therefore, while we agree with the conclusion of the Court of Appeal that the amendment of section 3602 has no impact on section 3601, that court erred in permitting this medical malpractice action to proceed against a coemployee defendant without regard to whether the defendant was acting within the scope of his employment.

## IV

### Scope of Employment

Since section 3601 governs this action, the dispositive question is whether defendant was acting within the scope of his employment when he negligently treated and/or diagnosed plaintiff's injury.

■ *Saala* v. *McFarland, supra,* 63 Cal.2d 124, is instructive in defining the "scope of employment" limitation of section 3601. " 'Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master.' [Citations.]" (63 Cal.2d at p. 129.) Approaching the question from another perspective, a coemployee's conduct is within the scope of his or her employment if it could be imputed to the employer under the doctrine of respondeat superior. If the coemployee was not "engaged in any active service for the employer," the coemployee was not acting within the scope of employment. (*Id.* at p. 130.)

We explained in *Saala* v. *McFarland, supra,* that this test implements the purpose of the exclusive remedy rule which protects employers. Adopting the reasoning of the referee we stated there: " '[T]he purpose of section 3601 is to make workmen's compensation the exclusive remedy of an injured workman against his employer. That purpose would be defeated if a right of action existed against a fellow employee acting in the scope of his employment in such a way that the fellow employee's negligence could be imputed to the employer. For that reason workmen's compensation was also made the exclusive remedy against a fellow workman "acting within the scope of his employment." The words "acting within the scope of his employment" should be construed in the light of the purpose of the section, so as not to extend the immunity beyond *respondeat superior* situations.' [Citation.]" (63 Cal.2d at p. 130.)

■ The statutory immunity established by section 3601 applies here. The allegations of the complaint and the employment contract, of which judicial notice has been taken, compel a conclusion that defendant was acting within the scope of his employment when he diagnosed and treated plaintiff. The Club was obligated to provide treatment for injuries related to plaintiff's employment, and defendant was under an obligation arising out of his employment relationship with the Club to provide that treatment. Unlike the situation of the defendants in *Duprey* v. *Shane, supra,* 39 Cal.2d 781, defendant did not step out of his coemployee role when he treated plaintiff. He did exactly what he was employed to do.

The conditions necessary to invoke the immunity granted by section 3601 are present here since both the original injury and the alleged aggravation

arose out of and in the course of plaintiff's employment and "at the time of the injury, [plaintiff was] performing service growing out of and incidental to his . . . employment and [was] acting within the course of his . . . employment." In addition "the injury [was] proximately caused by the employment . . . ." (§ 3600, subd. (a)(2) & (3).) Since the conditions of section 3600 were met, *and* defendant was acting within the scope of his employment when he diagnosed and/or treated plaintiff, section 3601, by its express terms, makes workers' compensation plaintiff's exclusive remedy. His action against defendant is statutorily barred.

 If a coemployee provides medical services other than those contemplated by the employee's employment and in so doing is not acting for the employer, he or she no longer enjoys the "immunity" from suit which section 3601 creates for acts which are within the scope of employment. In *Hoffman v. Rogers*, *supra*, 22 Cal.App.3d 655, for example, the coemployee physician provided postsurgical treatment to the plaintiff. In so doing, he engaged in a course of care and treatment beyond the preliminary diagnosis and referral which were the duties incidental to his employment. (*Id.* at p. 659.) In those circumstances, the coemployee may have assumed the "dual capacity" of a treating physician. Although analyzed by the court under the dual capacity doctrine, that doctrine was not necessary to the result since the exclusive remedy rule of section 3601 limited actions against coemployees only if the injury was caused by an act within the scope of the defendant coemployee's employment.[11]

By contrast, in *Wickham v. North American Rockwell Corp.* (1970) 8 Cal.App.3d 467 [87 Cal.Rptr. 563], workers' compensation benefits were held to be the injured employee's exclusive remedy for negligent diagnosis by a company physician. There, because the conditions of employment were dangerous to employees' health, a staff of physicians was employed for the purpose of examining, diagnosing, and treating employee ailments. The Court of Appeal agreed with the trial court which had sustained without leave to amend defendant's demurrer to a complaint alleging that one of those coemployee physicians had negligently failed to diagnose a progressive lung disease. The court reasoned that the medical services were provided because the employment posed an inherent health hazard, and the physical examinations provided by the employer were contemplated by the work. The complaint alleged that the coemployee physician was acting within the scope of his employment. Therefore, the court could not conclude,

[11]To the extent that *Hoffman v. Rogers*, *supra*, 22 Cal.App.3d 655, fails to recognize that a coemployee who performs duties beyond those incidental to employment may nonetheless be "engaged in . . . active service" for the coemployee's employer (*Saala v. McFarland*, *supra*, 63 Cal.3d 124, 130), it is disapproved.

"as the court did in *Duprey,* that when defendant [physician] examined plaintiff he did so in some capacity and relationship other than that which he ordinarily enjoyed, namely, that of a fellow employee." (*Id.* at p. 474.) Again, although the court failed to consider the limits of the immunity granted by section 3601, the result was consistent with those limits.

Here, too, defendant is not alleged to have any relationship to plaintiff other than a coemployee whose role was to provide medical care for injuries that are inherent in the nature of plaintiff's employment. The express language of section 3601 makes workers' compensation plaintiff's sole remedy in these circumstances.

## V

### LEAVE TO AMEND

The trial court in this case failed to note the omission of any allegations suggesting that defendant was acting outside the scope of his employment when he negligently diagnosed the nature of plaintiff's industrial injury. The court believed that *Hoffman* v. *Rogers, supra,* 22 Cal.App.3d 655, was factually on point, although defendant had argued that the complaint alleged only conduct within the scope of his employment duties. The court nonetheless sustained defendant's demurrer without leave to amend in the belief that the 1982 amendment of section 3602 made workers' compensation plaintiff's exclusive remedy even though a dual capacity situation had existed when defendant diagnosed and treated plaintiff.

On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. (Code Civ. Proc., § 472c; *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497 [146 Cal.Rptr. 614, 579 P.2d 505, 511].) If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

" 'Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' (*Lamoreaux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 623 [311 P.2d 1]; see *Cothran* v. *San Jose Water Works* (1962) 58 Cal.2d 608, 615 [25 Cal.Rptr. 569, 375 P.2d

449]; *Hardy* v. *Admiral Oil Co.* (1961) 56 Cal.2d 836, 840 [16 Cal.Rptr. 894, 366 P.2d 310]; *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358].) 'In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.' [Citation.] However, we have also made it clear that 'a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence.' " (*Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377].) That rule applies even when a complaint is not verified. (*Ibid.*)

██ Plaintiff has not met that burden in this case. He suggests that if granted leave to amend he would allege that defendant was an independent contractor. While plaintiff's allegation that defendant Losse was an employee was made on information and belief, he did not suggest to the trial court that a factual basis existed for amendment of the complaint to allege that defendant Losse was an independent contractor, and he has not demonstrated to this court either that the allegation that Losse was an employee was the result of inadvertence or mistake, or that he has since discovered a factual basis for alleging that Losse was an independent contractor. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

In these circumstances, although the allegation that defendant was an employee was made on information and belief, leave to amend need not be granted.

The order sustaining defendant's demurrer without leave to amend was not an abuse of discretion.

## VI

### Disposition

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and George, J., concurred.

Appellants' petition for a rehearing was denied January 16, 1992, and the opinion was modified to read as printed above.