Filed 5/14/14  American Master Lease v. Robins, Kaplan et al. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AMERICAN MASTER LEASE, LLC, | B246654 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles Country Super. Ct. No. SC114855) |
| ROBINS, KAPLAN, MILLER & CIRESI LLP | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles Country, Cesar Sarmiento, Judge.  Reversed.

Graham & Martin, Anthony G. Graham and Michael J. Martin, for Plaintiff and Appellant.

Robins, Kaplan, Miller & Ciresi, Roman M. Silberfeld and Michael A. Geibelson, for Defendant and Respondent.

_____

American Master Lease, LLC, appeals from an order of dismissal following the sustaining of a demurrer without leave to amend. Appellant sued its former counsel in a patent case, respondent Robins, Kaplan, Miller & Ciresi, for breach of contract, breach of the covenant of good faith and fair dealing, and negligence. The trial court concluded that the second amended complaint failed to state a cause of action because the contract to provide legal services was void for conflict of interest, and appellant was not damaged by respondent's negligent conflict check. We disagree and reverse.

**FACTS AND PROCEDURAL HISTORY**

As alleged in the second amended complaint, appellant obtained a business method patent in 2001. In 2007, appellant asked respondent to represent it in patent infringement cases, including one against Fort Properties Inc. (Fort). After conducting due diligence, respondent declined to do so at the time, but as we shall discuss, later, in 2011, it did represent appellant in a patent appeal.

*I. Idanta Case*

In 2007, appellant sued several defendants for aiding and abetting breach of fiduciary duty by inducing its employees and minority owners to set up Fort for the specific purpose of infringing on the patent. (See *American Master Lease LLC v. Idanta Partners LTD* (Feb. 25, 2014, No. B244689 [nonpub. opn.]) (hereafter *Idanta* case).) Fort was not a party to the *Idanta* case. At some point, the *Idanta* defendants were represented by an attorney in the New York office of Dreier Stein Kahan Browne Woods LLP (Dreier firm). At the time, Yakub Hazzard and Rori Starr Silver were attorneys in the Dreier firm's Los Angeles office. After the firm's collapse in January 2009, Hazzard and Silver joined the Entertainment and Media Department in respondent's Los Angeles office.

When the *Idanta* defendants retained respondent to represent them, appellant demanded that respondent withdraw because of its prior relationship with appellant. Respondent eventually complied. Appellant alleges "on information and belief" that Hazzard and Silver did not perform any substantive work for the *Idanta* defendants.

2

## II. *Fort Case*

Also in 2007, Fort sued appellant in federal district court, seeking to invalidate the patent (hereafter *Fort* case). The Dreier firm represented Fort until January 2009. Appellant alleges that "[n]either Mr. Haz[z]ard nor Ms. Silver were counsel for FORT and, on information and belief, neither at any time performed any legal work in the FORT matter." The district court granted Fort summary judgment. (See *Fort Properties Inc. v. American Master Lease, LLC* (C.D.Cal. 2009) 609 F.Supp.2d 1052.) Appellant contacted several law firms specializing in patent law to represent it on appeal. Horwitz & Levy and Mayer Brown estimated that the appeal would cost more than $250,000. Graham & Martin, appellant's trial counsel, quoted $60,000, exclusive of costs.

Michael Geibelson from respondent's Los Angeles office recommended David Swenson from the firm's headquarters in Minneapolis, Minnesota, whose specialty was patent law. For an inclusive upfront fee of $100,000, respondent orally offered that counsel in the Minneapolis office would prepare and file an opening and reply brief and argue the appeal, prepare and file further briefs in connection with any petition for rehearing and other related proceedings, and provide 30 hours of consulting work on remand. During the negotiations in December 2010, appellant's manager, Neil Roberts, told Geibelson he wanted to be sure conflict of interest would not be an issue. Giebelson assured Roberts that his initial investigation had uncovered no conflict and that before undertaking the representation respondent would conduct "a very thorough conflicts check."

On December 31, 2010, Roberts memorialized the parties' oral agreement in a letter to Giebelson, which was accompanied by a check for $100,000. The check and letter are attached to the complaint and incorporated by reference. The memo portion of the check states: "AML v. FORT Appellate Work Retainer." The first paragraph of the letter identifies the check as "payment in full for all work and related costs to be described more fully in an engagement letter to be executed between your firm and American Master Lease." The next paragraph describes the agreed-upon work to be undertaken by Swenson in the *Fort* case. The last paragraph suggests that the parties

3

considered pursuing other infringers in the future on mutually agreeable financial terms to be determined later.

On January 19, 2011, Giebelson sent Roberts an email entitled "Conflict Check run," which read, "No conflicts." The parties did not sign a formal retainer agreement, but respondent cashed the check and Swenson began work on the opening brief, which was due on February 18. Respondent sent the draft brief to appellant on February 2, and filed its notice of association as appellant's counsel two days later. On February 7, Fort's counsel demanded that respondent withdraw because Hazzard, a partner at respondent's Los Angeles office, had been with the Dreier firm when that firm represented Fort in the case. Respondent withdrew the next day. Because respondent did not dispute the alleged conflict, Anthony Graham of Graham & Martin, who was appellant's trial counsel and liaison with respondent, also withdrew from the appeal. Before withdrawing, Graham obtained a 30-day extension of the deadline for filing an opening brief.

Pressed for time to find new counsel, appellant retained Mayer Brown, which again estimated that the appeal would cost at least $250,000. The United States Court of Appeals for the Federal Circuit eventually affirmed the district court's decision invalidating the patent. (See *Fort Properties, Inc. v. American Master Lease LLC* (Fed.Cir. 2012) 671 F.3d 1317.) Mayer Brown billed appellant for $306,904.67. Respondent initially claimed it was entitled to $20,000 for Swenson's work on the appeal but eventually refunded the full $100,000 retainer. But it refused to mediate or arbitrate appellant's claim for damages in the amount of $206,904.67, which represented the difference between respondent's retainer and the amount billed by Mayer Brown.

## III. Present Case

In 2011, appellant sued respondent for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and violation of the Unfair Competition Law, Business and Professions Code section 17200 et seq. In the original complaint, appellant alleged that, "[e]vidently, unknown to [appellant]," Hazzard and Silver worked on the *Idanta* case, and Hazzard worked on the *Fort* case while with the Dreier firm. The complaint also alleged that counsel for Fort demanded respondent's

4

withdrawal because Hazzard had represented Fort. Attached to the complaint was a letter by Fort's counsel, asserting that "Hazzard personally represented" Fort while he was with the Dreier firm. In the first amended complaint, appellant alleged that Fort had been represented by the Dreier firm, "specifically" by Hazzard and Silver, until January 2009. In both versions of the complaint, appellant's theory was that respondent failed to do a competent conflict check that would have shown respondent had represented the opposing party in the same case for which it was retained.

The court sustained respondent's demurrer to the first amended complaint with partial leave to amend. The court rejected respondent's argument that no contract existed, finding the necessary terms of the parties' agreement to be sufficiently alleged. Because of the alleged conflict of interest, respondent alternatively argued that the contract was void *ab initio*. The court noted that appellant had changed its theory in the opposition to the demurrer, where it argued there was no actual conflict and an ethical wall could have been erected. The court concluded that, based on the allegations of conflict, the contract was void. It gave appellant leave to amend "if and only if it can, in good faith, allege" breach of a contract that was not void.

According to the court, the negligence claim failed to the extent it was based on the failure to provide legal services under the parties' agreement. While respondent's alleged failure to perform a competent conflict check was negligence independent of the agreement, the court found the damage allegations speculative and unrelated to that negligence. The court denied leave to amend the allegations about the failure to conduct a competent conflict check and the refusal to mediate or arbitrate, but it granted leave to amend the negligence claim along the same lines as the contract claim. The court sustained the demurrer to the cause of action for violation of the Unfair Competition Law without leave to amend because appellant did not seek restitution.

In the second amended complaint, appellant changed its theory, alleging "on information and belief" that neither Hazzard nor Silver worked on the *Fort* case. Appellant based the new allegation on respondent's representation in the demurrer that neither Hazzard nor Silver was listed on the docket in the *Fort* case, and that the

5

allegations in the first two versions of the complaint revealed Fort had been represented by the prior firm of one of respondent's lawyers. Appellant asserted that respondent breached the contract by withdrawing from the *Fort* appeal in the absence of actual conflict and by failing to erect an ethical screen to resolve any alleged conflict. It continued to claim its damages flowed from the fact that its trial counsel also felt obliged to withdraw in the face of respondent's alleged conflict, leaving appellant with less than a week to find competent counsel to take on a complex patent appeal.

The court sustained respondent's demurrer to the second amended complaint without leave to amend. The proposed order of dismissal, which the court signed, indicates the court concluded the contract was void. The court rejected the contention that fiduciary duties survived the unenforceable contract, or that an ethical wall could have been created to resolve the conflict. The court again concluded appellant had failed to sufficiently allege it suffered damages because it would have been in the same position had respondent declined to represent it in the appeal.

Appellant filed this timely appeal.

**DISCUSSION**

We review de novo the trial court's sustaining of a demurrer. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122.) ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.]"' (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits . . . ." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) We disregard allegations in later pleadings that are inconsistent with earlier allegations, unless they have a factual basis. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 743.)

"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without

leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment . . . ." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

I

Respondent argues there is no contract because the first and last paragraphs of the December 31, 2010 letter show it was an "agreement to agree." The first paragraph states that the enclosed check is for "work and related costs to be described more fully in an engagement letter to be executed between your firm and American Master Lease." The last paragraph contemplates a future agreement to pursue other infringers in the event appellant's patent is upheld. The trial court correctly rejected respondent's argument that, because the terms of the contract were incomplete and no formal engagement letter was executed, no contract was formed.

Courts favor enforcing contracts if the parties' intention can be ascertained. (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App. 4th 1251, 1255–1256.) Where an essential term is subject to a future agreement, it cannot be ascertained without the future agreement. (*Id*. at p. 1256.) But "[w]here the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one' the failure to follow it with a more formal writing does not negate the existence of the prior contract. [Citation.]" (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307 (*Harris*).) Whether the parties intended to negotiate further is a factual question not properly the subject of a demurrer. (*Id*. at pp. 308–309.)

Appellant sufficiently pled the existence of an oral agreement that respondent would conduct "a very thorough conflict check" before undertaking representation. It also alleged that respondent orally promised to provide legal services on appeal in the *Fort* case in exchange for a $100,000 retainer. The terms of that agreement appear in the second paragraph of the letter, over which respondent skips. These allegations were sufficient to state a claim for breach of contract. (See *Harris*, *supra*, 74 Cal.App.4th at p. 308.) While the parties had not agreed on the legal services respondent would provide in future infringement actions, appellant does not seek to enforce the terms of that future

7

agreement, and those terms are not essential to enforcing the parties' agreement with regard to the appeal.

## II

In arguing over the enforceability of the contract, the parties conflate the right of the former client to seek the disqualification of counsel in a case of conflicting representation with counsel's right to void a contract with its current client. These two rights are not coextensive.

### 1. Attorney Disqualification

The parties appear to be unsure about the law that governs attorney disqualification in the Federal Circuit, which hears appeals in patent cases. That circuit applies regional circuit law to procedural questions. (*Bose Corp. v. JBL, Inc.* (Fed.Cir. 2001) 274 F.3d 1354, 1360.) Since the appeal in the *Fort* case was from a decision of a district court in the Ninth Circuit, the Federal Circuit would have looked to cases from the Ninth Circuit. In disqualification matters, the Ninth Circuit looks to California law. (*In re County of Los Angeles* (9th Cir. 2000) 223 F.3d 990, 995.) Thus, California law governed respondent's disqualification in the *Fort* appeal.

Where an attorney successively represents clients with adverse interests, disqualification protects the former client's interest in preserving the confidential information disclosed to the attorney in the course of the prior representation. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 161.) That interest is balanced against the current client's right to counsel of its choosing. (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846.) The determinative factors are whether the representation of the former client was direct and personal and whether the successive representations are substantially related. (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 710–711.)

Where, as here, an attorney makes a lateral move between law firms that successively represent clients with adverse interests, as a rule the attorney's knowledge of the former client's confidential information is presumptively imputed to members of the attorney's new law firm, and the firm may be vicariously disqualified. (*Kirk v. First*

8

*American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 800 (*Kirk*).) After an extensive review of the rules of vicarious disqualification, the court in *Kirk* concluded that "when a tainted attorney moves from one private law firm to another, the law gives rise to a rebuttable presumption of imputed knowledge [of the former client's confidences] to the law firm, which may be rebutted by evidence of effective ethical screening. However, if the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive. [Citations.]" (*Id*. at p. 814.)

In *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1340 (*Adams*), an earlier case on which appellant principally relies, the court held that no conclusive presumption of imputed knowledge should arise if the attorney did not personally represent his former law firm's client, but the court should determine "whether confidential information material to the current representation would normally have been imparted to the attorney." The *Adams* court proceeded on the assumption that effective screening was not practically possible at a private law firm. (*Id*. at p. 1333). Under *Kirk*, *supra*, 183 Cal.App.4th 776, 784, such screening is possible.

Appellant has consistently alleged that the Dreier firm represented Fort while Hazzard and Silver were with that firm, and that Hazzard and Silver then joined respondent, which represented appellant against Fort in the same case. These allegations are sufficient to establish that a conflict existed. Appellant proceeds on the incorrect theory that effective screening would have been possible at the time Fort complained of the conflict, or that respondent should have opposed Fort's demand that it withdraw from the litigation. By then, it was too late to take preventive measures, and respondent was indeed subject to automatic disqualification. (See *Kirk*, *supra*, 183 Cal.App.4th 776, 810 & fn. 31 [to be effective, screen must be timely imposed—"before undertaking the challenged representation or hiring the tainted individual"].)

Whether respondent would have been automatically disqualified even if it had discovered the conflict earlier is a different issue, whose resolution depends on the two lateral hires' involvement in the *Fort* case. The allegations in the various versions of the

9

complaint are inconsistent on this issue. Respondent relies on the allegation in the first amended complaint that Fort had been represented in the same litigation by the Dreier firm, "specifically" by Hazzard and Silver, before they joined respondent. It urges us to disregard the inconsistent allegation in the second amended complaint that, "on information and belief," Hazzard and Silver did not work on the *Fort* case.

An inconsistent allegation may be disregarded unless the plaintiff provides a factual basis for it. (*Hendy v. Losse*, *supra*, 54 Cal.3d at p. 743; see also *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1043, fn. 25 ["Under the sham-pleading doctrine, admissions in an original complaint that has been superseded by an amended pleading remain within the court's cognizance and the alteration of such statements by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted"].) Appellant explains it changed its theory because respondent represented in the demurrer that Hazzard and Silver did not appear on the docket in the *Fort* case.

An essential fact may be supplied by a demurrer. (*Mohlmann v. City of Burbank* (1986) 179 Cal.App.3d 1037, 1041, fn. 2.) Moreover, "[w]here the exact nature of the facts is in doubt, or where the exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, the pleading may properly set forth alternative theories in varied and inconsistent counts. [Citation.]" (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 29.) Although all versions of the complaint are verified, they do not suggest that appellant knows the facts of the alleged conflict of interest. In the original complaint, appellant alleged that, "[e]vidently, unknown to [appellant]," Hazzard worked on the *Fort* case while with the Dreier firm. The letter by Fort's counsel demanding respondent's withdrawal, which was attached to the complaint, asserted that "Hazzard personally represented" Fort while he was with the Dreier firm. This assertion provides the only factual basis for appellant's original allegation. But respondent's demurrer suggested Hazzard might not have personally represented Fort if his name was not on the docket in the *Fort* case and thus provided a factual basis for the

10

inconsistent allegation in the second amended complaint.  Under the circumstances, the inconsistent allegations evince lack of knowledge rather than "sham" pleading.

Assuming that appellant has a good factual basis to allege inconsistent counts, the allegation that one or both lateral hires had represented Fort gives rise to a conclusive presumption of imputed knowledge and automatically disqualifies respondent.  Under this theory, had respondent run a competent conflict check, it would not have been able to undertake the representation at all.  The alternative allegation—that the lateral hires were not involved in the *Fort* case—opens up the possibility of continued representation if respondent had discovered the conflict before it undertook to represent appellant and had instituted timely screening.  Under this theory, respondent could have represented appellant but for its failure to run a timely and competent conflict check.

Appellant did not coherently advance either of these theories in the second amended complaint, but an amendment along these lines appears reasonably possible.  As we explain next, the fact that respondent was subject to automatic disqualification at the time when it withdrew does not prevent appellant from enforcing the contract for legal services.  Respondent breached that contract if, as alleged, it failed to deliver on its express promise to conduct a "very thorough conflicts check" before undertaking the representation.

### 2. *Voidability of the Parties' Contract*

Respondent argues, and the trial court agreed, that the parties' contract was "void *ab initio*" and therefore could not be enforced by appellant.  That is incorrect.  A void contract "'is no contract at all; it binds no one and is a mere nullity.  [Citation.] Consequently, such a contract cannot be enforced.  [Citation.]'  [Citation.]"  (*Fergus v. Songer* (2007) 150 Cal.App.4th 552, 573.)  A voidable contract, on the other hand, "is void as to the wrongdoer but not void as to the wronged party," unless that party elects to have a court declare it void.  (*White Dragon Productions, Inc. v. Performance Guarantees, Inc.* (1987) 196 Cal.App.3d 163, 172.)

A contract to render legal services in violation of the rules of professional conduct is voidable by the client as against public policy.  (*Fair v. Bakhtiari* (2011) 195

11

Cal.App.4th 1135, 1154, 1159–1161 (collecting cases).) In the case of "a serious breach of fiduciary duty, such as a conflict of interest that goes to the heart of the attorney-client relationship," the attorney may even be denied recovery in quantum meruit. (*Id*. at p. 1161.) Respondent insists that appellant has alleged a contract that violates rule 3-310(E) of the Rules of Professional Conduct, which prohibits successive representation of clients with adverse interests without the clients' consent. The contract is, therefore, voidable at appellant's, not respondent's, election. Since appellant did not elect to avoid it, the contract is enforceable against respondent.

Respondent is incorrect that its conflict of interest necessarily renders the contract for legal services void for illegality and unenforceable by the client. "[T]he doctrine of illegality considers whether the *object* of the contract is illegal." (*McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 346 (*McIntosh*).) In *McIntosh*, the court held that a fee-sharing agreement with a non-attorney was illegal and unenforceable by the non-attorney who was equally blameworthy. (*Id*. at p. 351.) The object of the contract in this case—the representation of appellant in a patent appeal against Fort, coupled with the express promise to conduct a conflict check and assurances that there was no conflict of interest—is not facially illegal. In any event, the doctrine of severability allows enforcement of legal provisions promoting lawful ends. (*Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 990–991.) The violation of rule 3-310 resulted from respondent's breach of its promise to conduct a thorough conflict check, which was intended to comply with the rule. Nor does the pleading indicate appellant was blameworthy. There is no allegation suggesting Roberts was aware that respondent had hired attorneys previously associated with the Dreier firm. He allegedly was aware of the conflict of interest in the *Idanta* case, which is why he insisted on a conflict check, but respondent does not contend its involvement in the *Idanta* case independently subjected it to automatic disqualification in the *Fort* case.

Respondent's alternative argument that the contract is void because of impossibility of performance also is incorrect. Impossibility or impracticability excuses performance on a contract if, after the contract is made, "a party's performance is made

impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made . . . ." (Rest.2d Contracts, § 261; see also *Johnson v. Atkins* (1942) 53 Cal.App.2d 430, 433.)  The impossibility of performing the contract after it was made was due to respondent's failure to uncover the conflict of interest in time to decline representation, seek a waiver from Fort, or erect an ethical wall.

Appellant may amend the complaint to allege inconsistent breach of contract theories and may enforce the parties' contract under either theory, so long as it does so in good faith.  Since the claims for negligence and breach of the covenant of good faith and fair dealing are based on the same allegations as the contract claim, we need not discuss them separately.

III

Respondent argues that appellant's damages are not causally connected to respondent's failure to uncover the conflict of interest in time.  We are not convinced.

As we have explained, had respondent conducted a successful conflict check before undertaking the representation, it would have had to either decline to represent appellant or take early measures to avoid automatic disqualification, such as instituting timely screening or seeking its former client's consent.  Under the latter theory, it might have been possible to continue representing appellant but for the breach, and appellant may be entitled to recover the benefit of its bargain.

Appellant also is entitled to damages caused by the delay in uncovering the conflict.  Respondent argues that appellant was not damaged because it retained Mayer Brown, a law firm it originally had contacted, and would have had to choose had respondent declined representation.  But that is not necessarily a foregone conclusion. Among the initial quotes was a $60,000 quote from appellant's trial counsel, Graham & Martin, which was involved in the appeal as a liaison with respondent.  Appellant's choice to retain respondent rather than have its trial counsel handle the appeal was its prerogative and does not affect the damages it may claim for substituting new counsel for respondent on short notice.  Proceeding with Graham & Martin after respondent's

13

withdrawal became impossible because of Graham's alleged decision to withdraw in an abundance of caution in case respondent's perceived conflict of interest had "infected" him.

We granted respondent's request for judicial notice of court records in the *Fort* case indicating Graham filed an entry of appearance in April 2011, two months after his alleged withdrawal, and continued as counsel of record for appellant after that date. Appellant alleges that Graham's name appeared on the docket as a result of clerical error because Graham did not do any substantive work on the appeal. Be that as it may, whether Graham at some point resumed his representation of appellant in the *Fort* appeal does not negate appellant's allegation that it was left unrepresented a week before the opening brief was due and had little time to find substitute counsel. Similarly, whether Mayer Brown had as much or more time than respondent to prepare an opening brief because of the extension Graham obtained does not negate the allegation that appellant had to retain that firm on extremely short notice.

Respondent argues damages are legally unascertainable because the last paragraph of the December 31, 2010 letter accompanying the check for $100,000 contemplates substantial future fees in relation to patent infringement actions. As we have explained, the parties' contemplated future agreements as to those actions are unrelated to the *Fort* appeal.

## DISPOSITION

The order of dismissal is reversed.  Appellant is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                EPSTEIN, P. J.

We concur:


MANELLA, J.


EDMON, J.*

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15