Filed 6/30/22  Peralta v. Shellpoint Mortgage CA1/4
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIRST APPELLATE DISTRICT

# DIVISION FOUR

| | |
|---|---|
| ROBERT PERALTA, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SHELLPOINT MORTGAGE, LLC, et al., <br><br> Defendants and Respondents. | A161437 <br><br> (Contra Costa County Super. Ct. No. MSC19-00695) |

Robert Peralta appeals from the judgment that followed the trial court's order sustaining the demurrer of Shellpoint Mortgage, LLC and the Bank of New York Mellon (collectively, Shellpoint).  He contends the trial court erred in sustaining Shellpoint's demurrer without leave to amend.  We conclude that Robert can amend his complaint to state valid causes of action against Shellpoint, so we will reverse the judgment.

## BACKGROUND

Because this case comes after the trial court sustained Shellpoint's demurrer, we draw the facts from the properly pleaded material facts in the second amended complaint.  (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 916.)

1

Beatriz Peralta took out a loan to buy a property in Hercules, and the loan was secured by a deed of trust on the property. By 2016, Shellpoint was the servicer on the loan.

Beatriz was current on the loan until February 2018, when she became ill. She passed away in August 2018. Beatriz requested a loan modification with Shellpoint before her death, but Shellpoint failed to appoint a single point of contact to communicate with her about foreclosure alternatives.

Sometime after Beatriz's death, her son Robert Peralta notified Shellpoint that Beatriz had died and the property had been transferred to him, qualifying him as her successor in interest. Within three months of Beatriz's death, Robert was able to start making payments on the loan, but Shellpoint refused to accept the payments due to the arrears on the loan.

In December 2018, Shellpoint caused a notice of default to be recorded. Shellpoint attached a declaration to the notice of default stating that 30 days or more had passed since Shellpoint had initially contacted Beatriz to assess her financial situation and explore options for her to avoid foreclosure. However, Shellpoint had failed to contact Beatriz by phone or in person to explore options to avoid foreclosure before recording the notice of default.

After Shellpoint caused a notice of trustee's sale to be filed in March 2019, Robert filed a complaint to enjoin the sale. After several rounds of demurrers and amendments, in January 2020 Robert filed the second amended complaint, in which he alleged one cause of action for violation of Civil Code section 2923.5 and

former section 2923.7, subdivision (a) (Stats. 2012, ch. 87, § 9); one cause of action for violation of former Civil Code section 2920.7; and one cause of action under the Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq.[1] In July 2020 the trial court sustained Shellpoint's demurrer to the second amended complaint without leave to amend.[2] Robert appealed.[3]

## DISCUSSION

### I. Standard of Review and Statutory Overview

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material

---

[1] Undesignated statutory citations are to the Civil Code.

[2] Because Robert concedes that the trial court properly sustained the demurrer to the claim for violation of former section 2920.7, we do not discuss it further.

[3] While the second amended complaint identifies the plaintiff as "Robert Peralta, as Trustee of the Beatriz Peralta Revocable Trust" (capitalization omitted), the notice of appeal identifies the appellant as simply "Robert Peralta." At oral argument, Shellpoint argued for the first time that Robert's failure to identify himself as the trustee deprived him of standing to appeal. We disagree. When an appellant identifies himself or herself as a trustee but has standing to appeal only as an individual, courts will disregard the trustee label as merely descriptive. (*Graham v. Lenzi* (1995) 37 Cal.App.4th 248, 254.) We apply the same principle here and hold that the absence of the descriptive label of trustee does not deprive Robert of standing to appeal. This is especially appropriate here, where the thrust of Robert's appeal is that he can amend his complaint to change his capacity as plaintiff.

facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)

" ' "When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect. . . ." [Citation.] The abuse of discretion standard governs our review of that question. [Citation.] "The plaintiff bears the burden of proving there is a reasonable possibility of amendment." [Citation.] To satisfy that burden, the plaintiff " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " ' " (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 342–343.)

In the first cause of action, the complaint alleged that Shellpoint violated two statutes, section 2923.5 and former section 2923.7, subdivision (a), that are part of the Homeowner Bill of Rights (Civ. Code, §§ 2920.5, 2923.4–2923.7, 2923.9–2923.12, 2923.15, 2923.17–2923.20) (HBOR). "The [HBOR] [citations], effective January 1, 2013, was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other

4

alternatives to foreclosure.' ([Civ. Code, ]§ 2923.4, subd. (a).)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.) The events relevant to this case transpired in 2018, so we apply the versions of the HBOR statutes in effect at that time.

Section 2923.5, subdivision (a) prohibits a mortgage servicer, among others, from recording a notice of default until 30 days after the servicer initially contacted the borrower either "in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (§ 2923.5, subd. (a)(1)(A), (2).) Subdivision (b) of the same statute obligates a servicer to include with a recorded notice of default "a declaration that the mortgage servicer has contacted the borrower" or that contact was excused. (§ 2923.5, subd. (b).)

Former section 2923.7, subdivision (a), stated, "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."

Section 2920.5, subdivision (c)(1) defines "borrower" for the purposes of section 2923.5 and former section 2923.7 as "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer."

5

Section 2924.12, subdivision (a)(1) and section 2924.19, subdivision (a)(1) provide that if "a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of" sections 2923.5 and 2923.7, among other provisions.

## II.  Standing

The trial court ruled that Robert had not alleged facts supporting his standing to raise claims under section 2923.5 and former section 2923.7 because, as relevant here, he brought his claims as the trustee of the Beatriz Peralta Revocable Trust and he had not alleged that the trust was the "borrower" as defined in the HBOR.  The court noted that the deed of trust recorded on the property, which the trial court judicially noticed, listed the borrower as "Beatriz Peralta, an unmarried woman."[4]  The trial court also found the UCL claim failed because it relied on the alleged HBOR violations and because Robert had not alleged he personally suffered any damages from Shellpoint's conduct.

Robert does not disagree with the trial court's ruling that he lacked standing as a trustee to raise the HBOR and UCL claims.  Instead, he contends the trial court erred in denying leave to amend because he can amend the complaint to overcome the standing problems the trial court identified.  Robert presents several alternative theories for how he might have standing.  We need address only his theory that he can allege HBOR and UCL

_____

[4] While Robert disagrees with other aspects of the trial court's use of judicial notice, he does not argue that the trial court improperly noticed this document as evidence of the identity of the borrower.

6

claims that belonged to Beatriz as her successor in interest, because that theory is viable.

As the complaint alleged and as is reflected in the notice of default attached to the complaint, Beatriz obtained the loan and signed a deed of trust to secure it. Section 2924.12, subdivision (a)(1) and section 2924.19, subdivision (a)(1) allow the "borrower" to assert a claim for violations of section 2923.5 and section 2923.7, and section 2920.5, subdivision (c)(1) defines the "borrower" as a natural person who is a mortgagor or trustor. Thus, Beatriz was the person who had standing to assert the claims alleged under section 2923.5 and former section 2923.7. As the borrower, she also would have suffered the late fees and interest that the complaint alleged followed from Shellpoint's acts of unfair competition based on the HBOR violations, so she had standing to assert a UCL claim as well.

Beatriz is deceased, but that is not necessarily the end of the matter. Section 377.20, subdivision (a) of the Code of Civil Procedure states, "(a) Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Section 377.30 of the Code of Civil Procedure further provides, "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in

interest." These two statutes create a presumption that Beatriz's claims survived her death and allow Beatriz's personal representative or, if none, her successor in interest to assert her claims on her behalf. Code of Civil Procedure section 377.11 defines a "decedent's successor in interest" as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Code of Civil Procedure section 377.10 defines "beneficiary of the decedent's estate" as the person or persons "who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action" under the decedent's will or, if none, the laws of intestate succession.

Robert asserts here that he can amend his complaint to allege that he has standing under these statutes as Beatriz's successor in interest because the second amended complaint alleged the property passed to him after his mother's death. This satisfies the requirements of the statute that Robert be either the beneficiary of Beatriz's estate or have succeeded to the "particular item of the property that is the subject" of the HBOR and UCL causes of action. (Code Civ. Proc., § 377.11.)

Section 377.32 establishes additional requirements for a litigant suing as a decedent's successor in interest. The text of the statute is set forth in the margin,[5] but briefly summarized, it

---

[5] Code of Civil Procedure section 377.32 states: "(a) The person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws

8

requires anyone who seeks to file an action as a decedent's successor to file a declaration under penalty of perjury describing details about the decedent's death and the administration of the decedent's estate, attesting that the declarant is the decedent's successor in interest, and averring that no one else has a superior right to commence the proceeding. (Code Civ. Proc., § 377.32, subd. (a).) It is unclear whether such a declaration is a necessary condition for a suit to proceed. (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1523–1524 ["Literally, this provision does not require that the affidavit be filed as a condition precedent to

---

of this state stating all of the following: [¶] (1) The decedent's name. [¶] (2) The date and place of the decedent's death. [¶] (3) 'No proceeding is now pending in California for administration of the decedent's estate.' [¶] (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest. [¶] (5) Either of the following, as appropriate, with facts in support thereof: [¶] (A) 'The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding.' [¶] (B) 'The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding.' [¶] (6) 'No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.' [¶] (7) 'The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.' [¶] (b) Where more than one person executes the affidavit or declaration under this section, the statements required by subdivision (a) shall be modified as appropriate to reflect that fact. [¶] (c) A certified copy of the decedent's death certificate shall be attached to the affidavit or declaration."

9

commencing or continuing the action. However, failure to file the affidavit could possibly subject the action to a plea in abatement"].) Even if the declaration is necessary, though, Robert asserts that he can provide it, so he can satisfy all relevant statutory requirements to assert a claim for Beatriz for violations of the HBOR and UCL.

Shellpoint does not dispute that Robert qualifies as a successor in interest under Code of Civil Procedure section 377.30. Instead, it raises several other arguments why Robert cannot allege that he has standing as Beatriz's successor in interest, but none of them has merit.[6] First, it argues that Robert forfeited this successor standing theory by failing to raise it in the trial court. But Shellpoint admits that a plaintiff can demonstrate in an appellate court for the first time that a complaint can be amended to state a valid cause of action, so this argument is baseless. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

Second, Shellpoint argues that Robert cannot be Beatriz's successor in interest under Code of Civil Procedure section 377.30 because Robert's prior complaints allege that he took title to the property as the trustee for the Beatriz Peralta Revocable Trust, not as an individual, as he now contends. Shellpoint invokes the sham pleading doctrine that prevents plaintiffs " 'from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or

_____

[6] Shellpoint does not dispute that Beatriz's HBOR and UCL claims survived her.

10

motions for summary judgment.' " (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 412.)

The sham pleading doctrine does not bar Robert's proposed amendment. "The sham pleading doctrine is not ' "intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts." ' [Citation.] Instead, it is intended to enable courts " 'to prevent an abuse of process." ' " (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 426.) The Supreme Court has " 'made it clear that "a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence." ' " (*Hendy v. Losse* (1991) 54 Cal.3d 723, 743.) As Robert details in his brief, he named himself in a trustee capacity due to a mistake about whether the property was an asset of Beatriz's trust and whether his status as trustee was the correct designation for the capacity in which he was alleging Beatriz's claims. This is an acceptable explanation for why he has changed his position. (*Deveny*, at pp. 426–427 [accepting a plaintiff's explanation for inconsistent allegations that he determined after consulting with experts that the earlier allegation was incorrect].)

It is particularly appropriate to allow Robert to amend his pleading given that Robert's new standing theory does not affect the substance of the HBOR and UCL claims against Shellpoint. This is unlike a situation where a plaintiff changes an allegation regarding a key fact that is an element of a cause of action to

11

avoid a demurrer. (See, e.g., *Hendy v. Losse, supra*, 54 Cal.3d at p. 743 [plaintiff changed allegation that defendant was an employee to allege defendant was an independent contractor, without stating that he had a factual basis for the change].) Robert's change from designating himself as a trustee to designating himself as an individual does not affect the core of the allegations about Shellpoint's actions in relation to Beatriz or make his proposed amended complaint a sham designed only to avoid a demurrer.[7] (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 ["courts have permitted plaintiffs who have been determined to lack standing . . . to substitute as plaintiffs the true real parties in interest" for the same cause of action].)

Third, Shellpoint argues the deed of trust defines a successor in interest of the borrower as someone who has taken title to the property and gives the successor the benefits of the loan only if the successor is approved by the lender. Shellpoint's reliance on the deed of trust's definition of a successor in interest is misplaced. The question is whether Robert satisfies the

---

[7] Robert argues that his proposed amendment is not barred by the statute of limitations because it relates back to the original complaint. Shellpoint does not dispute this, which we treat as a concession. Even had Shellpoint not conceded the point, we would hold that the amendment relates back because it does not change the core allegations of the HBOR and UCL causes of action. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409 ["The relation-back doctrine requires that the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one"].)

statutory requirements of a successor in interest to assert Beatriz's HBOR and UCL claims under Code of Civil Procedure sections 377.30 and 377.32, not whether he qualifies as a successor in interest under the terms of the deed of trust, loan, or some other document.

Fourth, Shellpoint objects that Robert has not filed or presented the declaration required by Code of Civil Procedure section 377.32, along with the requisite certified copy of Beatriz's death certificate.  (Code Civ. Proc., § 377.32, subds. (a), (c).) Robert did not present the declaration in the trial court because he did not raise the issue of standing under Code of Civil Procedure section 377.30 until this appeal.  Robert's representation in this court that he can and will file the necessary declaration if allowed leave to amend his complaint is sufficient.

Finally, Shellpoint questions why Robert did not simply file a new action rather than amending his complaint when the trial court sustained the demurrer.  Shellpoint cites no authority that would require Robert to file a new complaint rather than amending his existing complaint, and we are aware of none.

## III.   Shellpoint's alternative arguments

### A. Section 2923.5

Shellpoint argues that even if Robert properly alleges standing, the allegations in his complaint would still fail to state any valid causes of action.  Robert's claim that Shellpoint violated section 2923.5 relies on the allegations that Shellpoint recorded a notice of default without first contacting Beatriz in person or by

13

phone to discuss alternatives to foreclosure and that its declaration that it did contact Beatriz was false because Beatriz had died before they claimed to have contacted her. Shellpoint argues that both of these allegations are insufficient. As to the declaration, Shellpoint notes that the declaration states only that "[t]hirty (30) days, or more," had passed since Shellpoint contacted Beatriz and that Robert did not allege when he notified Shellpoint about Beatriz's death. Thus, according to Shellpoint, nothing in the declaration or complaint shows that Shellpoint claimed to have contacted Beatriz after her death in August 2018. Because Shellpoint could have contacted Beatriz months earlier, prior to her death, it contends the declaration is not false.

We agree with this reasoning, to a point. Robert's position that Shellpoint claimed to have contacted Beatriz after she died is not substantiated by the declaration, which is an exhibit attached to the complaint. (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943 ["Exhibits attached to the complaint take precedence to the extent they contradict allegations in the complaint"].) Logically, the declaration's statement in December 2018 that 30 days or more had passed since Shellpoint contacted Beatriz could mean that it contacted before her death in August 2018.

However, while the August 2018 date of Beatriz's death does not necessarily render Shellpoint's declaration false, the declaration would be false if we accept the complaint's separate allegation that Shellpoint failed to contact Beatriz in person or by phone before her death. Thus, our disagreement with Robert's

14

theory that the date of Beatriz's death itself disproves Shellpoint's declaration does not necessarily doom this cause of action. Robert's section 2923.5 claim would survive if he sufficiently alleged that Shellpoint's declaration was false in light of his allegation that Shellpoint failed to contact Beatriz in person or by phone to discuss foreclosure alternatives.

Shellpoint's attack on Robert's allegation that it failed to contact Beatriz before her death rests on a conflict Shellpoint perceives between two allegations in the complaint. After alleging that Shellpoint failed to contact Beatriz, the complaint alleged on information and belief that before her death Beatriz requested a loan modification with Shellpoint. Shellpoint argues that these allegations are inconsistent, since Beatriz could only have requested a loan modification if she had communicated with Shellpoint.

Reading the complaint as a whole, the allegations are not inconsistent. Section 2923.5, subdivision (a)(2) requires a servicer to contact a borrower "in person or by telephone." Consistent with the statute, the complaint alleged that Shellpoint did not contact Beatriz in person or by phone. The complaint does not allege that Beatriz requested a loan modification in person or by telephone, merely that she requested a loan modification. Beatriz could have requested a loan modification through some other means, such as writing a letter, sending a fax, or emailing Shellpoint. Thus, Beatriz's alleged loan modification request does not necessarily contradict the complaint's allegation that Shellpoint failed to contact her by

15

telephone or in person, as required before the recording of a notice of default under section 2923.5.

Shellpoint cites several federal district court decisions holding that a mere assertion of a lack of contact like Robert's is insufficient to state a claim that a servicer violated section 2923.5's contact requirements, and that gave conclusive effect to the servicer's declaration of compliance for the purposes of a motion to dismiss. (*Major v. Wells Fargo Bank, N.A.* (S.D. Cal., Aug. 15, 2014, No. 14-CV-998-LAB-RBB) 2014 U.S. Dist. Lexis 114977, at *6–*7 (*Major*); *Maguca v. Aurora Loan Servs.* (C.D. Cal., Oct. 28, 2009, No. SACV09-1086 JVS (Anx)) 2009 U.S. Dist. Lexis 104251, at *5–*6; *Juarez v. Wells Fargo Bank, N.A.* (C.D. Cal., Nov. 11, 2009, No. CV09-3104 AHM (AGRx)) 2009 U.S. Dist. Lexis 110892, at * 5.) These decisions are inapposite because they rely on federal pleading standards, not the notice pleading standards applicable in California courts. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 304, fn. 14 (*Morris*).) Under California law, the decisions are not persuasive. Giving conclusive effect to a servicer's declaration of compliance in the face of a simple claim of its falsity, like *Maguca* and *Juarez* did, impermissibly raises the bar for alleging a failure to file a truthful declaration.[8]

---

[8] In a related vein, Robert contends that the trial court erred by taking judicial notice of Shellpoint's declaration attached to the notice of default. He argues it was improper to use judicial notice of the existence of a document like the declaration as conclusive evidence of the truth of statements contained within the declaration. It does not appear that the trial court noticed the declaration in the way Robert suggests; that is Shellpoint's

*Major* and a case it cited held the plaintiffs should have alleged something more than just lack of contact, such as whether the plaintiffs were purposefully avoiding contact with the defendants, whether they could have been contacted if the defendants had tried with due diligence, or whether the plaintiffs received any phone calls or personal messages from the defendants. (*Major, supra*, 2014 U.S. Dist. Lexis 114977, at *7; *Newman v. Bank of New York Mellon* (E.D. Cal., Apr. 11, 2013, No. 1:12-CV-1629 AWI GSA) 2013 U.S. Dist. Lexis 52487, at *31–*32.) Allegations such as these are not necessary to state a claim under section 2923.5 in California court. The statute allows a servicer to record a notice of default without contacting a borrower if the servicer exercised due diligence in trying to contact the borrower. (§ 2923.5, subds. (a)(2), (e).) But where a servicer claims to have contacted a borrower, like Shellpoint did here in its declaration, the servicer's diligence and specific steps it may have taken or the borrower's attempts to avoid contact do not matter, at least at the pleadings stage. If the servicer believes such circumstances constitute a defense, it can explore these issues in discovery and raise them at summary judgment or trial.

### B. Former section 2923.7, subdivision (a)

In 2018, former section 2923.7, subdivision (a) stated, "Upon request from a borrower who requests a foreclosure

---

argument on appeal. In any event, there was no need to judicially notice the declaration because Robert attached it to the complaint.

17

prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."

Shellpoint argues that Robert's claim under former section 2923.7, subdivision (a) that it failed to appoint a single point of contact fails because Robert does not allege that Beatriz was making efforts to pursue an alternative to foreclosure. But the second amended complaint explicitly alleged on information and belief that Beatriz "requested a loan modification with Shellpoint before her death." Shellpoint does not explain why this is insufficient to allege a request for a foreclosure alternative.

Shellpoint also argues the complaint is insufficient because it does not allege that Beatriz requested a single point of contact. Shellpoint appears to be relying on a line of federal cases that held that the phrase "[u]pon request" in former section 2923.7, subdivision (a) required a borrower to request a single point of contact before a servicer was obligated to provide one. (*Green v. Cent. Mortg. Co.* (N.D. Cal. 2015) 148 F.Supp.3d 852, 873–874 [collecting cases].) This division recently rejected these cases' approach and held that the "[u]pon request" phrase refers merely to the timing of when a servicer must appoint a single point of contact. (*Morris*, *supra*, 78 Cal.App.5th at pp. 300–303.) Robert was not required to allege that Beatriz requested a single point of contact, so the complaint is sufficient. (*Ibid.*)

## C. Materiality

Shellpoint separately argues that the complaint fails to allege that either of the HBOR violations were material. When a trustee's deed has not been recorded, as is apparently the case here, section 2924.12, subdivision (a)(1) and section 2924.19, subdivision (a)(1) establish that "a borrower may bring an action for injunctive relief to enjoin a *material* violation of" section 2923.5 and 2923.7. (Italics added.)

This division recently addressed the pleading standard for materiality under the HBOR in *Morris*, *supra*, 78 Cal.App.5th 279. " 'A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan modification process, or otherwise harmed the borrower.' " (*Id.* at p. 304.) "[W]e read the 'otherwise harmed the borrower' prong of this test to mean harm to the borrower in her efforts to be considered for a loss mitigation option (§ 2923.4)." (*Id.* at p. 304, fn. 14.) "Ultimately . . . , we ask whether the alleged violation undermined the overall purpose of the HBOR. [Citation.] In doing so, we need not recharacterize the purpose of the HBOR because the Legislature has stated it plainly: 'The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' " (*Id.* at pp. 304–305.)

19

The second amended complaint sufficiently alleges materiality. As to section 2923.5, subdivision (a), the complaint alleged that Shellpoint failed to contact Beatriz more than 30 days in advance of filing the notice of default and falsely declared that it had done so. The point of such contact and the servicer's obligation to document the contact in a declaration is to help a borrower explore foreclosure alternatives, consistent with the HBOR's purpose of giving borrowers a meaningful opportunity to obtain any available loss mitigation options. (*Morris*, *supra*, 78 Cal.App.5th at p. 304 & fn. 14.) Shellpoint's failure to comply with this requirement logically undermined the purpose of the HBOR, and the complaint thus sufficiently alleges materiality.

Robert's allegation that Shellpoint failed to appoint a single point of contact in violation of former section 2923.7, subdivision (a) is similarly material. Shellpoint faults the complaint for not alleging that Shellpoint gave Beatriz the "run around," that Beatriz was pursuing a foreclosure alternative, or that the failure to appoint a single contact person resulted in the denial of a loan modification. We have already noted that the complaint does allege that Beatriz requested a foreclosure alternative in the form of a loan modification. The other allegations Shellpoint mentions are not necessary. The purpose of the single point of contact requirement is to give a single source of information to help borrowers seeking loss mitigation options. (*Morris*, *supra*, 78 Cal.App.5th at p. 305.) Shellpoint cannot credibly contend that this purpose was achieved despite its alleged complete failure to appoint a single point of contact.

20

Because the HBOR's purpose is to ensure that borrowers have a meaningful opportunity to obtain loss mitigations options, a servicer's actions that prevent a borrower from learning of such options are material. As noted in *Morris*, it "would render the SPOC statute effectively unenforceable" if we accepted Shellpoint's argument that a complete failure to comply with the statutory requirement could be immaterial. (*Id.* at p. 306.)

Shellpoint cites several decisions that have held a complaint failed to plead materiality. *Cardenas v. Caliber Home Loans, Inc.* (N.D. Cal. 2017) 281 F.Supp.3d 862, 870 held that allegations that the defendants violated section 2924.17 by recording, without standing, an inaccurate notice of substitution of trustee were not material because the lack of standing and inaccuracies did not affect the borrower's obligations, disrupt a loan modification process, or cause the plaintiff harm. *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1124, fn. 7 held that a servicer's alleged failure to initiate contact with a borrower was immaterial, to the extent that it violated the HBOR at all, because the borrower contacted the servicer and the statutory purpose of substantive discussions between the two was achieved. *Cornejo v. Ocwen Loan Servicing, LLC* (E.D. Cal. 2015) 151 F.Supp.3d 1102, 1113 held that a servicer's alleged failure to timely send an acknowledgment of a loan modification application was not material because the borrowers did not allege that the loan modification process was disrupted or that they were harmed. Finally, *Galvez v. Wells Fargo Bank, N.A.* (N.D. Cal., Oct. 4, 2018, No. 17-CV-06003-JSC) 2018 U.S. Dist.

21

Lexis 172087, at *10–*11 held that a plaintiff's allegation that the servicer improperly "dual tracked" a foreclosure and review of a loan modification application did not allege a material violation. The plaintiff had alleged that the dual tracking harmed her because she was never able to have her application reviewed, but the court held this was insufficient and the plaintiff needed to allege that she either was denied a modification to which she was entitled or had foregone other foreclosure alternatives. (*Id.* at *10–*14.)

Most of these decisions are not on point because "federal district judges have more latitude to dismiss claims at the pleading stage under *Bell Atlantic Corp. v. Twombly* [(2007) 550 U.S. 544] than California trial judges have under our traditional notice pleading standards." (*Morris*, *supra*, 78 Cal.App.5th at p. 304, fn. 14.) All these decisions are also distinguishable. Only *Schmidt* concerned a violation like those Robert alleges here, involving a failure to contact a borrower. But unlike that case, where the servicer and borrower nonetheless were in contact with one another so that the servicer could provide the borrower the necessary information, Shellpoint and Beatriz were allegedly not in contact, so Beatriz did not receive a meaningful opportunity to obtain any loss mitigation options.

### D. UCL Claim

The second amended complaint alleged a cause of action under the UCL, relying on the HBOR cause of action. California's UCL generally provides for equitable and

restitutionary relief from unfair competition, which the UCL defines as any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, §§ 17200, 17203; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech*, at p. 180.)

The trial court sustained Shellpoint's demurrer to the UCL claim, both because it had sustained the demurrer to the HBOR claim and because it believed Robert had not alleged that he personally lost money or property in a nontrivial amount. Our conclusions that Robert can adequately allege standing to pursue a HBOR claim on Beatriz's behalf and has stated a claim for violation of the HBOR dictates that the trial court's ruling on the UCL claim must also be reversed.

### E. Implied covenant of good faith and fair dealing

Robert argues for the first time on appeal that he should be allowed to amend his complaint to state a claim on his own behalf that Shellpoint breached the implied covenant of good faith and fair dealing in the loan agreement. We have already concluded that Robert can amend his complaint to state viable claims under section 2923.5, former section 2923.7, subdivision (a), and the UCL, so it is unnecessary for us to address whether this additional theory of liability is also viable. Robert is free to raise it in the trial court, which can address it in the first instance.

23

## DISPOSITION

The judgment is reversed as to the first and third causes of action. The judgment is affirmed as to the second cause of action. The trial court is directed to enter a new and different order overruling the demurrers with respect to the first and third causes of action. The cause is remanded for further proceedings consistent with this opinion. Robert Peralta shall recover his costs on appeal.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
NADLER, J.[9]

*Peralta v. Shellpoint, LLC, et al.* (A161437)

---

[9] Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.