Filed 11/22/23  Hassan v. Quantum3D CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KAZI HASSAN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>QUANTUM3D, INC.,<br><br>Defendant and Respondent. | H050403<br>(Santa Clara County<br>Super. Ct. No. 19CV360269) |

## I.  INTRODUCTION

Plaintiffs and appellants Kazi Hassan and Sisigma, Inc. (Sisigma) brought an action against defendant and respondent Quantum3D, Inc. (Quantum) and defendant Murat Kose alleging that they breached an oral agreement whereby plaintiffs would provide various services to Quantum in order to turn the company around in exchange for compensation that allegedly included 30 percent of Quantum's gross revenues.  The trial court sustained defendants' demurrers to the causes of action in the second amended complaint without leave to amend on the grounds of the sham pleading doctrine, which provides that where a complaint is amended to omit harmful allegations that render a cause of action defective, the trial court may disregard the new and contrary allegations in the amended complaint.  (See *Hendy v. Losse* (1991) 54 Cal.3d 723, 742–743 (*Hendy*).)

On appeal, Hassan and Sisigma argue that the trial court erred because the sham pleading doctrine does not apply to bar their claims. For the reasons stated below, we conclude that the trial court properly sustained the demurrers without leave to amend as to all causes of action remaining in the second amended complaint with the exception of the fifth cause of action labeled unjust enrichment. We will therefore direct the trial court (1) to vacate the order sustaining the demurrers to the first through fifth and seventh through ninth causes of action of the second amended complaint without leave to amend; and (2) to enter a new order sustaining the demurrer without leave to amend as to the first through fourth causes and the seventh through ninth causes of action and overruling the demurrer as to the fifth cause of action.

## II. BACKGROUND

### A. *Original Complaint*

In the original complaint, plaintiff Hassan described himself as "an accomplished engineer and entrepreneur with 25 years[ of] experience in the technology industry." Hassan is the founder and principal of plaintiff Sisigma, a California corporation.

Plaintiffs alleged as follows regarding defendants Quantum and Kose.[1] Quantum is a Delaware corporation that is "a wholly-owned subsidiary of Havelsan, which is owned by the Turkish Armed Forces Foundation." Plaintiffs asserted that Kose and Quantum were agents of each other and acted within the scope of their agency.

Hassan was initially contacted by Kose on August 13, 2017, when Kose telephoned Hassan stating he was "working with a Turkish-owned Silicon Valley software company" and wanted to connect with technology leaders. Hassan and Kose then met at Quantum's headquarters on August 15, 2017. During the meeting, Kose informed Hassan that Quantum was losing money and he had been engaged to turn the company around. Kose stated that the "Turkish government did not know what to do

---

[1] Defendant Kose is not a party to this appeal.

with QUANTUM and that he had not yet been formally hired by QUANTUM." Kose also told Hassan that Sisigma's KnotSuite application could be marketed and sold in Turkey. Hassan was introduced by Kose to Dr. Abdullah Cavusoglu, the chairman of Havelsan's board of directors, and several Quantum company officers.

A day later, on August 16, 2017, Kose and Cavusoglu went to Hassan's home for a dinner meeting. During the meeting, they asked Hassan to help turn Quantum around because Kose lacked experience in running a company. At that time, Kose was not employed by Quantum and "was acting in his individual capacity." Kose and Cavusoglu also said "they did not yet have control over QUANTUM, so they could not officially engage [Hassan and Sisigma]. KOSE and Cavusoglu asked HASSAN to instruct, guide and train KOSE from behind the scene, promising compensation and revenue sharing once they gained control the company." Kose and Cavusoglu "reiterated they could not formalize anything with [Hassan and Sisigma] until they first gained control of QUANTUM."

Kose and Cavusoglu also "promised that, once they assumed control of QUANTUM, HASSAN would receive a director position within Havelsan and a business relationship between QUANTUM, Havelsan and SISIGMA would be formalized." Kose and Cavusoglu "represented to HASSAN that, upon KOSE's assumption of leadership at QUANTUM, which they estimated would occur within six months, three promises would be formalized: (1) HASSAN would be appointed to Havelsan's board of directors; (2) QUANTUM would become a partner and customer of SISIGMA and they would engage new customers in Turkey, with 70% revenue going to QUANTUM and 30% revenue going to SISIGMA; and (3) [Hassan and Sisigma] would be recognized for their work from the outset. Details of the partnership agreement would be refined as the parties continued working together."

Thereafter, Hassan performed work for Quantum that included restructuring the management team, executing a technology transfer project, training Kose, fixing a toxic

3

culture, dissuading Quantum from implementing a wasteful internal product plan, revitalizing Quantum's existing product, developing a new product strategy, formulating a plan to solve Quantum's customer acquisition problem, instructing Kose on which projects to pursue or abandon, and devising initiatives to increase customers for existing products.

In October 2017 Kose and Hassan had a meeting in which they agreed to form a new corporation named KnotReal, in which Quantum would have 70 percent of the company's shares and Sisigma would have 30 percent, and Havelsan would invest $15 million. Hassan developed partnership agreements in collaboration with Kose, which he emailed to Kose and Cavasoglu in November 2017. However, Kose responded by feigning ignorance of the terms of their agreement. On November 25, 2017, Kose informed Hassan that he had been appointed CEO of Quantum and asked Hassan for his help with an upcoming trade show. Hassan continued to assist Kose in reliance on Kose's previous promises.

In December 2017 Hassan asked Kose for an update, and Kose responded that he was trying " 'to finalize [a] tech transfer.' " Hassan then discovered that Quantum was using and marketing the ideas of Hassan and Sisigma in violation of their agreements. After Hassan told Kose that he was not allowed to use his ideas, Kose ceased all communications with Hassan while retaining the benefits of his work.

Based on these allegations, the original complaint included a cause of action for breach of oral contract, which stated: "As of August 2017, KOSE was not yet employed by QUANTUM. Accordingly, KOSE was acting in his individual capacity. After KOSE's employment formally commenced with QUANTUM, particularly after he was elevated to CEO on or about November 25, 2017, QUANTUM was the beneficiary of [Hassan's] industry, and because its CEO knew it was receiving services from [Hassan and Sisigma], QUANTUM effectively ratified and/or affirmed the oral agreement. After becoming CEO of QUANTUM, KOSE acted on QUANTUM's behalf in all dealings

4

with [Hassan and Sisigma]. [¶] In the alternative, because KOSE and HASSAN negotiated contract terms in front of Cavusoglu, the chairman of the board of Havelsan, QUANTUM's sole or majority shareholder, KOSE had ostensible authority to bind QUANTUM."

The original complaint also included causes of action for promissory estoppel, unjust enrichment, breach of confidential relationship, trade secret misappropriation, fraud, and violation of Business and Professions Code section 17200.

After defense counsel sent plaintiffs' counsel a meet and confer letter (Code Civ. Proc., § 430.41 [requirement to meet and confer prior to filing demurrer]), plaintiffs obtained new counsel and filed a first amended complaint.

**B.** *First Amended Complaint*

The first amended complaint included several allegations that were different from the allegations of the original complaint. Significantly, the first amended complaint expressly alleged that Kose and Quantum had formed a joint venture with Hassan and Sisigma and that Kose was the agent of Quantum. Plaintiffs also alleged that in August 2017 Kose and Cavasoglu "claimed that they had complete authority over [Quantum] and had the power to bind it to legal agreements and commitments." According to plaintiffs, Kose and Cavasoglu said that they had this authority because Havelsan owned Quantum, Cavasoglu was Havelsan's chairman, and Kose was Quantum's agent "to obtain the necessary resources to effect a turnaround at [Quantum]." However, Kose and Cavasoglu also stated that they lacked "practical control" over Quantum and "requested that the joint venture's work be kept secret until they achieved certain business objectives."

The first amended complaint further alleged that the terms of the parties' oral agreement to form a joint venture included contributions by a division of Sisigma, KnotReal, and contributions by Quantum. KnotReal, through Hassan, would analyze Quantum's management, operations, and culture, reinvent Quantum's product strategy, and adopt new business strategies to make Quantum a high performing business.

5

Quantum would cooperate in these efforts and give KnotReal 30 percent of Quantum's gross revenue.

Kose allegedly became a "Liaison Officer" for Quantum in August 2017 and began implementing some of Hassan's recommendations. Hassan performed work to turn Quantum around similar to the work alleged in the original complaint. However, Kose and Cavasoglu did not want to make the parties' joint venture public until certain milestones were met in Quantum's turnaround, including Kose being appointed CEO. Once these milestones were met, Kose and Cavasoglu promised that Hassan would be made a director of Havelsan, Havelsan would promote Sisigma in Turkey, and Havelsan would make an immediate investment in KnotReal and a multi-million dollar investment at a later date. Relying on these promises, Hassan abandoned his plan to market Sisigma's KnotSuite application in Bangladesh and redirected Sisigma's efforts to the market in Turkey.

In November 2017 Kose told Hassan that he had been appointed CEO of Quantum, and requested Hassan's assistance with an upcoming trade show. In December 2017 Kose told Hassan that Cavasoglu had left Havelson. Although Kose wanted Hassan to remain involved with Quantum, Kose said Hassan's contributions could not yet be publicly announced. Kose also told Hassan that he could outsource in Bangladesh, and Hassan responded that he did not do outsourcing and requested an in-person meeting regarding Kose's promises and commitments. When Kose replied that he was too busy to meet, Hassan checked Quantum's Twitter account and discovered that Quantum was using plaintiffs' work product. Hassan notified Kose that Quantum could not use plaintiffs' work product without honoring its commitments. Thereafter, Kose ceased all communications with Hassan. Hassan believes that Havelsan has implemented a version of Sisigma's KnotSuite application.

Based on these and other allegations, the first amended complaint includes causes of actions for (1) breach of oral joint venture agreement between Sisigma and Quantum;

6

(2) breach of implied in fact contract between Sisigma and Quantum; (3) fraud; (4) negligent misrepresentation; (5) unjust enrichment; (6) trade secret misappropriation; (7) breach of joint venture; (8) breach of partnership; (9) breach of fiduciary duty; and (10) violation of Business and Professions Code section 17200.

### C. *Demurrer to First Amended Complain*

Defendants Kose and Quantum demurred to the first amended complaint on the grounds that none of the causes of action stated facts sufficient to constitute a cause of action. Specifically, defendants argued that all causes of action, with the exception of the fifth cause of action for unjust enrichment and the sixth cause of action for trade secret misappropriation, were barred under the sham pleading doctrine due to plaintiffs' inconsistent allegations regarding agency and the terms of the alleged agreements.[2] The demurrers did not address the tenth cause of action for violation of Business and Professions Code section 17200.

In their memorandum of points and authorities, defendants asserted that key allegations regarding agency were inconsistent, including the allegations in the original complaint that Kose and Cavasoglu advised Hassan during the August 2017 meeting that they did not have authority to bind Quantum, which conflicted with the allegations in the first amended complaint that Kose and Cavasoglu had complete authority over Quantum and the power to bind it to legal agreements.

Further, defendants pointed out that the original complaint and the first amended complaint alleged different terms for the parties' purported agreements with respect to the compensation that plaintiffs would receive from Quantum in exchange for providing turnaround services. The original complaint alleged that Hassan would be appointed to Havelsan's board of directors, Sisigma would receive 30 percent of the revenue from new

---

[2] The record reflects that plaintiffs have dismissed the sixth cause of action for trade secret misappropriation with prejudice. We therefore need not further address this cause of action in the present appeal.

7

customers in Turkey of a partnership between Quantum and Sisigma, and plaintiffs' work would be recognized from the outset. In contrast, defendants noted, the first amended complaint alleged that plaintiffs' compensation would include Sisigma receiving 30 percent of Quantum's revenue, Havelsan would market Sisigma's KnotSuite application in Turkey, and recognition of plaintiffs' work would not be immediately announced.

Defendants argued that under the sham pleading doctrine, plaintiffs could not cure the defects in the original complaint by pleading inconsistent facts in the first amended complaint without explanation. Since plaintiffs had alleged in the original complaint that Kose and Cavasoglu advised them during the August 2017 meeting that they did not have authority to bind Quantum, defendants contended that no oral agreement with Quantum was formed during the August 2017 meeting and the inconsistent allegations in the first amended complaint regarding their authority to bind Quantum must be disregarded. Defendants also maintained that the inconsistent allegations regarding the terms of the alleged agreement with Quantum showed that no contract was formed in the absence of the parties' agreement regarding the material terms. Accordingly, defendants argued that their demurrers to the first cause of action for breach of oral joint venture agreement and the second cause of action for breach of implied contract should be sustained without leave to amend. For the same reasons, defendants maintained that plaintiffs could not state either the seventh cause of action for breach of joint venture agreement, the eighth cause of action for breach of partnership agreement, or the ninth cause of action for breach of fiduciary duty.

Defendants also argued that inconsistent allegations regarding the authority of Kose and Cavasoglu to bind Quantum were fatal to the third cause of action for fraud and the fourth cause of action for negligent misrepresentation under the sham pleading doctrine. Defendants explained that when the inconsistent allegations of the first

amended complaint regarding agency were disregarded, plaintiffs failed to allege that any representations were made by an agent of Quantum.

As to the fifth cause of action for unjust enrichment, defendants asserted that unjust enrichment is not an independent cause of action.

Plaintiffs opposed the demurrers to the first amended complaint, contending that the sham pleading doctrine did not apply to bar their claims. They maintained that the first amended complaint properly clarified inartful pleading by prior counsel in the original complaint regarding the control and authority that Kose and Cavasoglu exerted over Quantum. Alternatively, plaintiffs argued that the allegations in the original complaint were sufficient to show that Kose had ostensible authority to bind Quantum, since it was alleged that Kose had negotiated the parties' agreement in the presence of Cavasoglu, the chairman of Havelsan, Quantum's corporate parent. Plaintiffs also argued that the allegations of the original complaint were sufficient to show that the parties' agreement was ratified by Quantum accepting the benefits of the agreement that Kose had negotiated. As to the claim that the allegations were inconsistent with respect to the terms of the parties' agreement, plaintiffs responded that the allegations of the first amended complaint superseded the allegations of the original complaint. Accordingly, plaintiffs argued that the demurrers to the first amended complaint should be overruled.

**D.** *Order Sustaining Demurrer to First Amended Complaint*

In the February 25, 2022 order, the trial court sustained the demurrers to the first amended complaint with leave to amend as to defendant Quantum and overruled the demurrers as to defendant Kose. The court agreed with defendants that original complaint alleged that Kose and Cavasoglu lacked authority to enter into agreements on behalf of Quantum, and that the inconsistent allegations in the first amended complaint regarding their authority should be disregarded under the sham pleading doctrine. The court further agreed that the inconsistent allegations regarding the terms of the parties' agreement, including whether the parties had entered into a partnership or a joint venture,

9

precluded a sufficient allegation of contract formation. The court therefore granted plaintiffs leave to amend the first amended complaint to explain the inconsistencies.

### E. *Second Amended Complaint*

The second amended complaint essentially restated the factual allegations of the first amended complaint and included the same 10 causes of action as the first amended complaint. However, the second amended complaint included several new paragraphs captioned "Explanation Of Inconsistencies Between Second Amended Complaint And Original Complaint." (Capitalization and underline omitted.) In their explanation, plaintiffs acknowledged that there were certain inconsistencies in the allegations in the original complaint and the first amended complaint, but explained that the allegations of the first amended complaint were correct and clarified any ambiguities.

Plaintiffs further explained that the inconsistent allegations were due to their first attorney, who was based in San Diego, preparing the original complaint in "extreme haste" and communicating in writing or by phone, with no in-person meeting with plaintiffs. Plaintiffs additionally stated that they had only three days to review the complaint and did not review the final version that was filed 10 days after the first attorney was retained. Also, Hassan asserted that English is his second language and he understood the word "control" in the original complaint's allegations to mean only that Kose and Cavasoglu lacked "practical control."

Plaintiffs also stated that they "never meant to convey that KOSE and CAVOSOGLU stated during the August 2017 meeting that they lacked legal authority to enter QUANTUM3D into a binding contract. To the contrary, as alleged in this Second Amended Complaint, KOSE and CAVOSGOLU represented that they had complete authority to do so but felt that they lacked practical control and needed plaintiffs' help, from behind the scenes, in gaining that practical control." Plaintiffs also asserted that "[i]n short, the Second Amended Complaint, written with the benefit of new counsel and

10

without the extreme time constraints and resulting communication issues associated with the Original Complaint, reflects an accurate version of events."

**F.** *Demurrer to Second Amended Complaint*

Defendants demurred on the grounds that the causes of action in the second amended complaint, except the sixth cause of action for trade secret misappropriation, failed to state facts sufficient for any cause of action under the sham pleading doctrine. The demurrers did not address the tenth cause of action for violation of Business and Professions Code section 17200. Defendants argued in their memorandum of points and authorities that plaintiffs' explanations of the reasons for the inconsistencies in their pleading did not overcome the sham pleading doctrine because their explanations were not plausible, for two reasons.

First, defendants asserted that plaintiffs' explanation that their original allegation that they lacked control over Quantum was clarified in the first amended complaint to clarify that Kose and Cavasoglu only lacked practical or operational control, and could bind the company to legal agreements, was not persuasive because the original complaint also alleged that Kose lacked authority to bind Quantum and was acting in his individual capacity. Second, defendants argued that plaintiffs' explanation regarding the haste in which the original complaint was drafted and filed was not plausible since plaintiffs failed to specifically explain how the circumstances, such as having only three days to review the draft complaint, prevented them from correcting any inaccuracies in the allegations of the original complaint.

In their opposition to the demurrers, plaintiffs contended that their explanation of the difficult circumstances that resulted in any inconsistencies in the allegations of the original and first amended complaint was adequate and did not implicate the sham pleading doctrine in the absence of dishonest pleading. Alternatively, plaintiffs argued that even if the allegations that Kose and Cavasoglu stated at the August 2017 meeting with Hassan that they lacked control of Quantum were disregarded, the second amended

11

complaint sufficiently alleged an implied in fact joint venture agreement and unjust enrichment on the basis of the allegations that Quantum accepted the benefit of plaintiffs' performance under the agreement.

### G. *Order Sustaining Demurrer and Judgment of Dismissal*

In the July 29, 2002 order the trial court sustained Quantum's demurrers to the first through fifth and seventh through ninth causes of action of the second amended complaint without leave to amend under the sham pleading doctrine.

Regarding the inconsistent allegations, the trial court determined that "[t]he initial complaint alleges that Kose and Cavusoglu did not have control over Quantum, Kose was not employed by Quantum and could not contract on behalf of Quantum or bind Quantum to a contract until he was employed by Quantum," and these allegations were inconsistent with the allegations in the second amended complaint that Kose and Cavasoglu told Hassan that they had complete authority to bind Quantum to legal agreements. (Underline omitted.) The court also determined that the allegations regarding the terms of the parties' alleged agreement in the original complaint and the second amended complaint were inconsistent.

Further, the trial court ruled that plaintiffs' explanation in the second amended complaint regarding the reasons for the inconsistences was implausible because plaintiffs only offered the excuse that they had failed to notice the inaccurate allegations in the original complaint, and therefore the sham pleading doctrine applied.

On February 7, 2023, this court ruled as follows regarding the absence of a judgment of dismissal in the record on appeal: "This court deems the July 29, 2022 order sustaining the demurrer to the first through fifth and seventh through ninth causes of action to incorporate a judgment of dismissal of those causes of action in favor of respondent Quantum3d, such that the August 17, 2022 entry of dismissal of the sixth

12

cause of action served as the final judgment resolving all causes of action against Quantum3d.  [Citation.]"**3**

### III.  DISCUSSION

#### A.  *Standard of Review*

On appeal from an order of dismissal after a demurrer is sustained without leave to amend, our review is de novo.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  In performing our independent review of the complaint, we assume the truth of all facts properly pleaded by the plaintiff.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  Further, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans, supra*, at p. 6.)

We also consider matters that may be judicially noticed and facts appearing in any exhibits attached to the complaint.  (Code Civ. Proc., § 430.30, subd. (a); *Schifando, supra,* 31 Cal.4th at p. 1081.)  After reviewing the allegations of the complaint, the complaint's exhibits, and the matters properly subject to judicial notice, we exercise our independent judgment as to whether the complaint states a cause of action as a matter of law.  (See *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  In doing so, we are mindful that "[i]n the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."  (Code Civ. Proc., § 452.)

---

**3** Defendants did not demur to the tenth cause of action for violation of Business and Professions Code section 17200 and plaintiffs did not address the tenth cause of action in the proceedings below or object to this court's entry of a judgment of dismissal. We therefore deem any issue arising from the tenth cause of action for violation of Business and Professions Code section 17200 to be forfeited.  (See *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776.)

**B.** *Analysis*

**1. Contract Causes of Action**

The second amended complaint includes a first cause of action for breach of oral joint venture agreement between Sisigma and Quantum and a second cause of action for breach of implied in fact joint venture agreement between Sisigma and Quantum. In both contract causes of action, plaintiff Sisigma alleges that it entered into an oral joint venture agreement with Quantum in August 2017, that Kose was Quantum's agent authorized to enter into the agreement on Quantum's behalf, and that the terms of the agreement were that Sisigma would provide contributions to Quantum to turn the company around, and in return Quantum would give Sisigma 30 percent of its gross revenue.

According to the allegations of the second amended complaint, Sisigma performed under the joint venture agreement and Quantum breached the agreement by failing to give Sisigma 30 percent of its gross revenue. The trial court sustained defendants' demurrers to the contract causes of action without leave to amend under the sham pleading doctrine due the inconsistencies in the pleading of agency and the terms of the contract between the original complaint and the second amended complaint.

**2. The Parties' Contentions**

On appeal, plaintiffs argue that the trial court erred in granting defendants' demurrers without leave to amend on the ground the contract causes of action were barred under the sham pleading doctrine due to the inconsistent pleading regarding agency. According to plaintiffs, the original complaint sufficiently alleged the breach of contract causes of action because it was alleged that Quantum ratified the agreement by accepting the benefits of Sisigma's performance of the contract, and ratification does not require actual agency when the contract is formed.

Alternatively, plaintiffs argue that the second amended complaint plausibly explained why the erroneous allegations in the hastily prepared original complaint—that Kose and Cavasoglu did not have control of Quantum—were appropriately corrected in

14

the amended complaints because Hassan meant to convey that Kose and Cavasoglu lacked "practical control" of Quantum, not that they lacked authority to enter into a contract on Quantum's behalf. Plaintiffs also argue that the different allegations regarding the terms of the parties' agreement do not constitute a pleading defect subject to the sham pleading doctrine, since a plaintiff may correct pleadings by amendment.

Defendant Quantum responds that plaintiffs failed to offer a plausible explanation for the inconsistency between the allegation in the original complaint that Kose and Cavasoglu " 'said they did not yet have *control over* QUANTUM, so they could not *officially* engage Plaintiffs' " and the allegation in the second amended complaint that "that they had complete authority over QUANTUM3D and had the power to bind it to legal agreements and commitments."

Quantum asserts that Hassan's contention that he misunderstood the meaning of the word "control" in the original complaint is not believable in light of the other allegations in the original complaint, including the allegations that Kose told Hassan he had not been hired by Quantum and was acting in his individual capacity, and he could not expressly contract with plaintiffs until he became CEO of Quantum. These allegations are also, Quantum argues, fatal to plaintiffs' contention that they sufficiently alleged in the original complaint that Kose and Cavasoglu had ostensible authority as agents to bind Quantum.

Quantum further asserts that plaintiffs' explanation for the inconsistent allegations in the second amended complaint regarding agency and the terms of the alleged agreement is not plausible. According to Quantum, plaintiffs do not explain how the hasty preparation of the original complaint prevented them from noticing that the complaint did not allege that Kose and Cavasoglu had authority to bind Quantum to a contract or that there were inaccuracies in the allegations of the contract terms.

We will begin our evaluation of the parties' contentions with an overview of the sham pleading doctrine.

### 3. The Sham Pleading Doctrine

The California Supreme Court has stated the sham pleading doctrine as follows: " ' "Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation." [Citations.] "In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer." [Citation.] However, we have also made it clear that "a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence." ' [Citation.] That rule applies even when a complaint is not verified. [Citation.]" (*Hendy*, *supra*, 54 Cal.3d at pp.742–743.)

In *Hendy*, the plaintiff initially alleged that that he and the defendant physician were co-employees, and the trial court sustained defendant's demurrer on the grounds that the medical malpractice action was barred by the exclusive remedy of workers' compensation. (*Hendy*, *supra*, 54 Cal.3d at pp. 727-729.) On appeal, the plaintiff argued that he should be granted leave to amend his complaint to allege that the defendant physician was an independent contractor and therefore his medical malpractice claim was not subject to the exclusive remedy rule. The Supreme Court ruled that leave to amend could not be granted under the sham pleading doctrine, because "[w]hile plaintiff's allegation that defendant [physician] was an employee was made on information and belief he did not suggest to the trial court that a factual basis existed for amendment of the complaint to allege that defendant [physician] was an independent contractor, and he has not demonstrated to this court either that the allegation that [defendant] was an employee was the result of inadvertence or mistake, or that he has since discovered a factual basis for alleging that [defendant] was an independent contractor. [Citation.]" (*Id*. at p. 743.)

Thus, "[w]hen a plaintiff files an amended complaint, it may not 'omit harmful allegations . . . from previous complaints.' [Citations.] Unless the plaintiff provides a

'plausible' explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new and contrary allegations. [Citation.]" (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 195 (*Smyth*).)

However, the sham pleading doctrine " 'is not intended to prevent honest complainants from correcting erroneous allegations or prevent the correction of ambiguous facts.' [Citation.] Instead 'the rule must be taken together with its purpose, which is to prevent [an] amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully.' [Citations.]" (*JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 690-691; see also *Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 449 [sham pleading doctrine did not apply where amended pleading merely clarified basis for relief]; *Dones v. Life Insurance Co. of North America* (2020) 55 Cal.App.5th 665, 688 [sham pleading doctrine did not apply where the amendment did not alter the fundamental facts upon which plaintiff's claim was based],)

**4. The Sham Pleading Doctrine Applies to the Contract Causes of Action**

Having reviewed the original complaint, the first amended complaint, and the second amended complaint, we determine for several reasons that the sham pleading doctrine applies, such that when the inconsistent allegations regarding agency in the second amended complaint are disregarded, plaintiffs have failed to state facts sufficient for either the first cause of action for breach of oral joint venture agreement or the second cause of action for breach of implied joint venture agreement.

First, we agree with the trial court that plaintiffs' explanation for the inconsistent allegations regarding whether Kose and Cavasoglu had authority to bind to Quantum to an agreement whereby Hassan through Sisigma would provide turnaround services to Quantum in exchange for the specified benefits is implausible. Plaintiffs' conclusory allegations that the circumstances in which the original complaint was prepared, which

17

included a distant attorney, limited time to review the draft complaint, and Hassan's English as a second language, do not explain why the original complaint failed to expressly allege that Kose and Cavasoglu represented that they were agents of Quantum with authority to bind the company to contracts, as subsequently alleged in the second amended complaint. Plaintiffs have not demonstrated that the allegations in the original complaint, including that Kose and Cavasoglu told Hassan in the August 2017 meeting that and they could not formalize any agreement with plaintiff until Kose became CEO, was the result of inadvertence or mistake in light of Hassan's alleged presence at the meeting. (See *Hendy*, *supra,* 54 Cal.3d at p. 743.)

Further, although the original complaint also includes boilerplate allegations that the parties were agents of each other, those allegations are insufficient. The general rule is that in reviewing the trial court's order on a demurrer, "we apply the rule that specific allegations control general pleadings." (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 827.) Here, the more specific allegations in the original complaint that Kose and Cavasoglu "did not yet have control over QUANTUM, so they could not officially engage [Hassan and Sisigma]" and Kose and Cavusoglu "reiterated they could not formalize anything with [Hassan and Sisigma] until they first gained control of QUANTUM" control over the general boilerplate allegations of agency.

Accordingly, in performing our review we may disregard the allegations in the second amended complaint that Kose and Cavasoglu represented that they had complete authority to bind Quantum, and determine whether the original complaint stated facts sufficient for the contract causes of action. (See *Smyth, supra,* 31 Cal.App.5th at p. 195.) Plaintiffs contend that the original complaint sufficiently alleged contract formation by ratification, since Quantum allegedly accepted the benefits of plaintiffs' work to turn Quantum around. We disagree.

"Ratification is the voluntary election by a person to adopt in some manner as his [or her] own an act which was purportedly done on his [or her] behalf by another person,

18

the effect of which, as to some or all persons, is to treat the act as if originally authorized by him [or her]. [Citations.]" (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.) However, as this court has stated, "[w]here a writing is not required, a principal may ratify an agency 'by accepting or retaining the benefit of the act, with notice thereof.' (Civ. Code, § 2310.) But 'ratification is possible only when the person whose unauthorized act is to be accepted purported to act as agent for the ratifying party.' [Citation.] " (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 (*van't Rood*).) As we have discussed, the allegations of the original complaint show that Kose and Cavasoglu did not purport to act as agents for Quantum, instead alleging that they could not formalize an agreement with Hassan and Sisigma until they gained control of Quantum and Kose became CEO. Accordingly, the allegations in the original complaint are insufficient to establish contract formation by ratification.

### 5. The Sham Pleading Doctrine Applies to the Fraud and Negligent Misrepresentation Causes of Action

In the second amended complaint, plaintiffs similarly allege in the third cause of action for fraud and the fourth cause of action for negligent misrepresentation that Sisigma entered into a joint venture agreement with Quantum upon Kose's representations that Sisigma would receive various benefits under the agreement, including 30 percent of Quantum's gross revenue; that defendants knew or should have known that Kose's representations were untrue; and Quantum is liable for either fraud or misrepresentation because Kose was its actual agent or became Quantum's agent by ratification.

Plaintiffs argue that the trial court erred in sustaining the demurrers to the fraud and misrepresentation causes of action because both the original complaint and the second amended complaint allege that Quantum "ratified Kose and Cavusoglu's words and conduct" by accepting the benefits of the parties' contract. Defendants argue to the contrary that the allegations of the original complaint show that Kose and Cavasoglu

19

advised Hassan during the August 2017 meeting that they were not agents of Quantum, and accordingly there is no basis for an allegation that Kose and Cavasoglu were ostensible agents of Quantum.  Defendants also note that plaintiffs allege that in November 2017, after Kose became CEO, he disavowed the alleged agreement.

"A corporation may be held vicariously liable as a principal for the torts of its agents.  [Citation.]" (*Secci v. United Independant Taxi Drivers, Inc.* (2017) 8 Cal.App.5th 846, 855.)  However, as we have discussed, under the sham pleading doctrine we disregard the inconsistent allegations of the second amended complaint that Kose and Cavasoglu were Quantum's actual agents, and determine whether the allegations of the original complaint are sufficient to state causes of action for fraud and negligent misrepresentation.  Plaintiffs are correct that a principal may be liable for the acts of an ostensible agent.  (Civ. Code, § 2334; *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403-404.)  "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him [or her]." (Civ. Code, § 2300.)  "Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury." (*Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761.)

Here, the allegations of the original complaint are insufficient to establish that Kose and Cavasoglu were ostensible agents of Quantum.  We reiterate that " 'ratification is possible only when the person whose unauthorized act is to be accepted purported to act as agent for the ratifying party.'  [Citation.] " (*van't Rood*, *supra*, 113 Cal.App.4th at p. 571.)  As we have discussed, the allegations of the original complaint show that Kose and Cavasoglu did not purport to act as agents for Quantum, instead alleging that they could not formalize an agreement with Hassan and Sisigma until they gained control of Quantum and Kose became CEO.  Accordingly, the allegations in the original complaint

are insufficient to establish that Kose and Cavasoglu were ostensible agents of Quantum such that Quantum would be liable for fraud and misrepresentation due to their representations to Hassan, and therefore the trial court did not err in sustaining the demurrers to the causes of action for fraud and misrepresentation without leave to amend.

### 6. Unjust Enrichment

In the fifth cause of action for unjust enrichment in the second amended complaint, plaintiffs alleged that Quantum benefited from the "hard work and industry" of Hassan and Sisigma by making Quantum more competitive and causing it to flourish. Plaintiffs further allege that "[i]t is inequitable for defendants to have accepted and retained these benefits from plaintiffs without consideration or payment of their value."

Plaintiffs contend that the trial court erred in sustaining the demurrer to the unjust enrichment cause of action because "[a] claim for unjust enrichment does not require that Kose and Cavusoglu had control over Quantum3d at the August 16, 2017, meeting sufficient to bind Quantum3d to a contract." Defendants respond that unjust enrichment is not a valid cause of action; alternatively, defendants contend the allegations are insufficient under an equitable theory because there was no allegation that Quantum knowingly accepted the benefits of the alleged agreement that Hassan would provide turnaround services to Quantum.

This court has determined that " '[u]njust enrichment is not a cause of action, however, or even a remedy, but rather " ' "a general principle, underlying various legal doctrines and remedies" ' . . . . [Citation.]  It is synonymous with restitution." ' Citation.]" (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal. App.4th 221, 231 (*Rutherford Holdings*).)  We may construe the cause of action labeled unjust enrichment as a quasi-contract claim seeking restitution. (*Ibid*.)  " 'Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises.  They are obligations created by law for reasons of justice.' [Citation.]  Quasi contractual recovery is based upon benefit

21

accepted or derived for which the law implies an obligation to pay." (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 794.)

Thus, " '[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]' [Citations.] 'The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it.' [Citations.]" (*Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 725.)

In the present case, plaintiffs allege in the second amended complaint that they provided various types of services to Quantum, such as restructuring the management team and training Kose to become CEO of Quantum, that benefited the company by making it successful. Our standard of review requires us to liberally construe these allegations "with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) Accordingly, we determine that the fifth cause of action labeled "unjust enrichment" states facts sufficient for a cause of action in quasi-contract seeking restitution, and the trial court erred in sustaining the demurrer to the fifth cause of action without leave to amend. (See *Rutherford Holdings, supra*, 223 Cal. App.4th at p. 231.) We will therefore direct the trial court to enter a new order that overrules the demurrer to the fifth cause of action.

**7. Causes Of Action For Breaches Of Partnership Agreement, Joint Venture Agreement, And Fiduciary Duty**

Based on the allegations of the second amended complaint that plaintiff Sisigma entered into an oral joint venture agreement with Quantum in August 2017, plaintiffs assert a seventh cause of action for breach of partnership agreement, an eighth cause of action for breach of joint venture agreement, and a ninth cause of action for breach of

22

fiduciary duty arising from defendants breaching their duty as partners and joint venturers.

We understand plaintiffs to contend that the trial court erred in sustaining the demurrers to these causes of action without leave to amend because the original complaint stated facts sufficient for the contract causes of action. However, we have previously determined, as discussed above, that the allegations in the original complaint are insufficient to establish contract formation by ratification. We therefore also determine that the trial court did not err in sustaining the demurrers to the seventh, eighth, and ninth causes of action.

## IV. DISPOSITION

The judgment is reversed. The trial court is directed (1) to vacate the order sustaining the demurrers to the first through fifth and seventh through ninth causes of action of the second amended complaint without leave to amend; and (2) to enter a new order sustaining the demurrer without leave to amend as to the first through fourth causes and the seventh through ninth causes of action and overruling the demurrer as to the fifth cause of action. The parties shall bear their own costs on appeal.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

WILSON, J.

*Hassan et al. v. Quantum3D, Inc.*
**H050403**